TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

TYLER M. ALEXANDER (CA Bar No. 313188)
Trial Attorney
Natural Resources Section
150 M St. NE, Third Floor
Washington, D.C. 20002
(202) 598-3314
tyler.alexander@usdoj.gov

*Attorneys for Defendants*

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| State of Arizona,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>　　　　Defendants. | Case No. 2:21-cv-00617-PHX-DWL<br><br>**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (RULES 12(b)(1), (6))** |

**TABLE OF CONTENTS**

Introduction ............................................................................................................... 1

Legal Standards ........................................................................................................ 2

    I.    Dismissal under Rule 12(b)(1) for Lack of Subject-Matter Jurisdiction ...... 2

    II.    Dismissal under Rule 12(b)(6) for Failure to State a Claim ........................ 3

Argument ................................................................................................................... 3

    I.    Arizona Lacks Standing to Sue .................................................................... 3

    II.    Arizona's NEPA Claims Should be Dismissed ............................................ 5

    III.    Arizona's Stand-Alone APA Claims are Not Cognizable ............................ 6

    IV.    Arizona's Take Care Clause and Impoundment Control Act Claims Fail ................................................................................................................. 8

        a.    The Take Care Clause does not create a cause of action. ................... 8

        b.    Arizona cannot state a claim under the Impoundment Control Act. .............................................................................................................. 11

Conclusion ............................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Am. Fed'n of Gov't Employees, AFL-CIO v. Trump*,
  318 F. Supp. 3d 370 (D.D.C. 2018) .................................................................................. 9

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ................................................................................... 4, 5, 6

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ............................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 3

*Bennett v. Spear*,
  520 U.S. 154 (1997) ....................................................................................................... 12

*Botany Worsted Mills v. United States*,
  278 U.S. 282 (1929) ....................................................................................................... 12

*Bowsher* v. *Synar*,
  478 U.S. 714 (1986) ....................................................................................................... 13

*Citizens for Resp. & Ethics in Wash. v. Trump*,
  302 F. Supp. 3d 127 (D.D.C. 2018) .................................................................................. 9

*Dalton v. Specter*,
  511 U.S. 462 (1994) ....................................................................................................... 10

*Delta Data Sys. Corp. v. Webster*,
  744 F.2d 197 (D.C. Cir. 1984) ....................................................................................... 13

*In re Aiken County*,
  725 F.3d 255 (D.C. Cir. 2013) .................................................................................... 9, 10

*Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*,
  861 F.3d 944 (9th Cir. 2017) ............................................................................................ 7

*Lee v. City of L.A.*,
  250 F.3d 668 (9th Cir. 2001) ............................................................................................ 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ....................................................................................................... 12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................................... 9

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ..................................................................................................... 4, 9

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .................................................................................. 3

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ..................................................................................... 2

*Nat'l Tr. for Historic Pres. v. Suazo*,
    No. CV–13–01973–PHX–DGC, 2015 WL 1432632 (D. Ariz. Mar. 27, 2015) .............. 7

*Or. Nat. Res. Council v. Thomas*,
    92 F.3d 792 (9th Cir. 1996) ...................................................................................... 7

*Pride v. Correa*,
    719 F.3d 1130 (9th Cir. 2013) .................................................................................. 2

*Pub. Citizen v. Stockman*,
    528 F. Supp. 824 (D.D.C. 1981) ............................................................................. 12

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) .................................................................................... 3

*Rogers v. United States*,
    14 Cl. Ct. 39 (1987) ................................................................................................ 12

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................... 3

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
    594 F.2d 730 (9th Cir. 1979) .................................................................................... 2

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) .................................................................................... 3

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .................................................................................. 2

**Statutes**

10 U.S.C. § 2808 ........................................................................................................ 13

10 U.S.C. § 284 .......................................................................................................... 13

2 U.S.C. § 687 ............................................................................................................ 12

2 U.S.C. §§ 681-88 .................................................................................................... 11

5 U.S.C. § 701(a)(2) .................................................................................................... 8

5 U.S.C. § 702 ............................................................................................................. 8

5 U.S.C. § 706(2) ........................................................................................................ 6

5 U.S.C. §§ 701-706 ............................................................................................... 6, 10

8 U.S.C. § 1103 ............................................................................................................ 7

Pub. L. No. 104–208, 110 Stat. 3009 (1996) ............................................................. 11

Pub. L. No. 110-161, 121 Stat. 1844 (2007) ............................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 3

**Regulations**

50 C.F.R. § 17.95 ......................................................................................................... 5

**INTRODUCTION**

Arizona asks this Court to unwind decisions by the Department of Defense (DoD) to cancel border wall projects along the State's southern border with Mexico and by the Department of Homeland Security (DHS) to end the Migrant Protection Protocols (MPP). But the State lacks standing to bring its claims, so this Court must dismiss Arizona's complaint for want of jurisdiction. Even if the State had standing, its claims are inconsistent and incorrect. While the State argues (wrongly) that the agencies' decisions require environmental review under the National Environmental Policy Act (NEPA), it also contends (again inaccurately) that the Take Care Clause and Impoundment Control Act compel DHS to undertake *less* environmental planning. Neither theory passes muster, and this Court should dismiss the entire Complaint.

First, Arizona lacks standing. The State asserts that the decisions to halt border wall construction and terminate MPP have encouraged unlawful migration that will lead to harmful environmental effects. First Am. Compl. for Declaratory and Inj. Relief ¶¶ 116-42, ECF No. 13 ("First Am. Compl."). But this same "enticement theory" was only weeks ago rejected by the Ninth Circuit. *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas (Whitewater Draw)*, 5 F.4th 997, 1014-16 (9th Cir. 2021). The only other injury theory the State offers is the facially implausible suggestion that preserving migration corridors—diminished as they may be by previous construction—is somehow worse for wildlife than more border wall. First Am. Compl. ¶¶ 139-42. These conclusory allegations do not meet the State's burden to establish standing, and the Court should dismiss Arizona's First Amended Complaint under Rule 12(b)(1).

Second, even if Arizona had standing, its claims lack merit. In seeking a preliminary injunction, Arizona pressed only its NEPA claims—that a programmatic NEPA analysis is required for the administration's alleged "Population Augmentation Program," and that NEPA analyses were required before terminating MPP and cancelling certain border wall construction projects. *See* Mt. for Prelim. Inj. ECF No. 17. The Court should dismiss each; they fail for the reasons discussed in Defendants' Opposition

1

to Arizona's Motion for a Preliminary Injunction. *See* Defs.' Opp'n to Pl.'s Mt. for Prelim. Inj. ECF No. 24 ("Defs.' Opp'n").

The claims Arizona omitted from its emergency motion are weaker still.[1] Arizona's fifth and sixth claims for relief assert freestanding arbitrary and capricious theories that are not cognizable in this circuit; they should be dismissed under Rule 12(b)(6). Arizona's seventh claim for relief tries to evade the APA's limits on review and invoke a cause of action reserved to the Comptroller General. Those claims are similarly unavailable and should also be dismissed.

For the reasons stated in Defendants' earlier briefing and the reasons stated below, this Court should dismiss Arizona's First Amended Complaint.

## LEGAL STANDARDS

### I. Dismissal under Rule 12(b)(1) for Lack of Subject-Matter Jurisdiction

Federal Courts are courts of limited jurisdiction, and Rule 12(b)(1) allows a defendant to challenge the Court's subject-matter jurisdiction to hear the case. A challenge may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). For facial attacks, the reviewing court must dismiss for lack of subject matter jurisdiction if—accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor—the allegations do not establish jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). By contrast, when a motion to dismiss presents "a factual attack on subject matter jurisdiction . . . [n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

---

[1] Arizona's fourth contingent claim for relief alleging a violation of Section 7 of the Endangered Species Act was withdrawn by stipulation. *See* Order ¶ 4, ECF No. 20.

2

## II.    Dismissal under Rule 12(b)(6) for Failure to State a Claim

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).  In addition, a complaint that fails to provide the grounds for the requested relief beyond labels and conclusions will not survive a motion challenging the sufficiency of a complaint's statement of the claim for relief under Rule 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

When a plaintiff fails to assert a cognizable legal theory in support of a claim, the claim must be dismissed.  Moreover, while a plaintiff's material factual allegations are assumed to be true, district courts may not assume the truth of legal conclusions "merely because they are cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  In deciding a motion to dismiss, courts may consider the facts alleged in the complaint, documents either attached to or relied on by the complaint, and facts on which the court may take judicial notice.  *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).  A court may dismiss a claim under Rule 12(b)(6) if the plaintiff does not fall within the zone of interests protected by the law invoked.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

## ARGUMENT

### I.   Arizona Lacks Standing to Sue

Defendants' Opposition to Arizona's Motion for a Preliminary Injunction explained how Arizona lacks standing for its NEPA claims because: (1) Arizona's generic and speculative affidavits do not show an imminent, concrete injury to the State's

interests and (2) Arizona cannot show that its alleged harms are fairly traceable to the challenged decisions or redressable by a Court order. Defs.' Opp'n 11-21, ECF No. 24. These same defects require dismissal of the remaining claims for relief.

Three of the State's alleged injuries are foreclosed by the Ninth Circuit's opinion in *Whitewater Draw*. Arizona alleges that the government's actions have enticed noncitizens to enter the country, leading to: (1) impacts from unlawful migration, and most specifically litter left behind by migrants crossing the southern border, First Am. Compl. ¶¶ 116-21, ECF No. 13; (2) increased greenhouse gas emissions, First Am. Compl. ¶¶ 122-33[2]; and (3) increased demands on the State's infrastructure and other alleged impacts from long-term population growth, First Am. Compl. ¶¶ 134-138. Again, these generic and speculative statements cannot meet the State's burden to establish standing. *See* Defs.' Opp'n 12-14. And even if these ambiguous claims of harm from litter or greenhouse gas emissions were cognizable injuries, Arizona cannot show that they are caused by the challenged decisions rather than the result of the "'myriad economic, social, and political realities' that might influence an alien's decision to 'risk[] life and limb' to come to the United States." *Whitewater Draw*, 5 F.4th at 1015 (quoting *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015)). Indeed, the State's own citations concede that "most of the migrants do not necessarily understand the intricacies of U.S. border policy," First Am. Compl. ¶ 68 (citing Miriam Jordan, *From India, Brazil and Beyond: Pandemic Refugees at the Border*, New York Times (May 16, 2021), https://www.nytimes.com/2021/05/16/us/migrants-border-coronavirus-pandemic.html), and instead erroneously perceive a "limited-time offer to enter the United States." *Id.*

---

[2] Arizona never explicitly says how increased air emissions harm the State. Presumably the State is alleging that greenhouse gasses associated with immigration are a contributing factor to climate change. But Arizona has not tried to show how climate change has harmed the State's concrete interests. *Cf. Massachusetts v. EPA*, 549 U.S. 497, 522-23 (2007) (finding that climate change leads to rising sea levels that injured plaintiff state's interests as a landowner by diminishing coastal property).

Because Arizona cannot show that its alleged injuries are traceable to the challenged decisions, the State cannot meet its burden on standing.

Finally, Arizona offers the facially implausible allegation that preserving remaining migration corridors along the southern border will somehow cause greater harm to endangered species than more border wall construction. First Am. Compl. ¶¶ 139-42. Arizona makes no real attempt to explain this theory beyond asserting that unfenced areas could serve as "a 'bottleneck for species' which may affect predator patterns and harm endangered species." *Id.* ¶ 94. But more border wall construction would only *further* narrow migration corridors and thus exacerbate the "bottleneck" effect the state alleges. And if a contiguous border wall were ever completed, cross-border migration for some species might be impossible. *See* 50 C.F.R. § 17.95 (showing designated jaguar critical habitat along Arizona's border with Mexico); United States Fish and Wildlife Service, *News Release: Jaguar photographed in southern Arizona's Cochise County* (March 2, 2017), https://www.fws.gov/news/ShowNews.cfm?ref=jaguar-photographed-in-southern-arizona%E2%80%99s-cochise-county &_ID=35988.

Arizona cannot show that any impacts associated with increased migration are fairly traceable to the challenged decisions. And the State's wildlife injury theory is unsupported and conclusory. Arizona has not met its burden on standing, and this Court should dismiss the State's First Amended Complaint under Rule 12(b)(1).

## II.  Arizona's NEPA Claims Should be Dismissed

Defendants' earlier briefing showed that Arizona's first three claims for relief, if considered, fail. Arizona's NEPA challenge to the decision to terminate the remaining 18 miles of planned border wall construction in Arizona fails because: (1) NEPA was waived under the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Defs.' Opp'n 23-26, ECF No. 24; (2) IIRIRA's jurisdictional bar forecloses judicial review of APA claims challenging the waivers, *id.* at 26-27; (3) the decision to not build more border wall does not alter the environmental status quo, *id.* at 28-29; and (4) Arizona may not invoke APA review to challenge the policy directives of the

President, *id.* at 29-31.  Arizona's NEPA challenge to the termination of MPP fails because: (1) returning certain noncitizens to contiguous countries pending their removal proceedings is committed to DHS's discretion by law, *id.* at 32-33; (2) the decision to terminate MPP is not a reviewable final agency action, *id.* at 34-37; and (3) the decision to terminate MPP is an enforcement decision, and so not a "major federal action" requiring NEPA analysis, *id.* at 37-39.  Finally, Arizona's challenge to its contrived "Population Augmentation Program" claim is an impermissible programmatic challenge barred under Supreme Court and Ninth Circuit precedent, *id.* at 40-45, and none of the components of the so-called "program" are reviewable, *id.* at 45-47.  For these same reasons, which Defendants incorporate here, this Court should dismiss Arizona's first, second, and third claims for relief, First Am. Compl. ¶¶ 148-59, ECF No. 13, under Rule 12(b)(6).

**III.    Arizona's Stand-Alone APA Claims are Not Cognizable**

Arizona's fifth claim for relief argues that the decision to terminate border wall construction was "issued on the first day of the new administration[,]" which "precludes any thoughtful analysis by Defendants" and "is accordingly arbitrary and capricious" in violation of the APA.  First Am. Compl. ¶¶ 169, 171 (citing 5 U.S.C. § 706(2)).  Arizona's sixth claim for relief argues that Secretary Mayorkas' decision to terminate MPP did not provide "sufficient justification" or "consider Arizona's reliance interest[3] on the MPP," and so is also "arbitrary and capricious" under the APA.  *Id.* ¶¶ 173-77 (citing 5 U.S.C. § 706(2)).  Because the Ninth Circuit does not recognize standalone APA claims, neither states a claim upon which relief may be granted.

The APA provides a limited waiver of sovereign immunity, a cause of action, and a standard of review for claims challenging final agency action.  5 U.S.C. §§ 701-706.  But it does not provide the substantive law for a court to apply in deciding whether a

---

[3] Arizona's First Amended Complaint does not allege any actions taken by the State relying on MPP.

decision is arbitrary and capricious; that must come from another statute. *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996). As the Ninth Circuit has explained, a court may not review an agency action or find that agency action is arbitrary and capricious "in the absence of a statutory benchmark against which to measure an agency's exercise of discretion." *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 955 (9th Cir. 2017); *see also Nat'l Tr. for Historic Pres. v. Suazo*, No. CV–13–01973–PHX–DGC, 2015 WL 1432632, at *9 (D. Ariz. Mar. 27, 2015) (dismissing standalone APA claim).

Arizona has not identified any statutory criteria against which this Court could review the challenged decisions. And, indeed, none exist. Congress has vested in the Secretary of Homeland Security discretion over if, how, and where to install border infrastructure. *See* Consolidated Approbations Act, 2008, Pub. L. No. 110-161, § 564(2)(D), 121 Stat 1844, 2091 (2007) (codified at 8 U.S.C. § 1103 note) ("nothing in this paragraph shall require the Secretary of Homeland Security to install fencing, physical barriers, roads, lighting, cameras, and sensors in a particular location along an international border of the United States, if the Secretary determines that the use or placement of such resources is not the most appropriate means to achieve and maintain operational control over the international border at such location"). And, as explained in Defendants' earlier briefing, whether to return certain noncitizens to Mexico pending removal proceedings is committed to DHS's discretion by statute and by well-established precedent foreclosing judicial review of enforcement decisions. *See* Defs.' Opp'n 31-33, ECF No. 24. With no identified statutory criteria, there is no law to apply, and Arizona's claims fall beyond the APA's limited waiver of sovereign immunity. *See Or. Nat. Res. Council*, 92 F.3d 798-99; *see also id.* at 798 n.11 (in order "[t]o have standing under APA § 702, a claimant must show he 'suffer[ed] legal wrong because of agency action . . . *within the meaning of a relevant statute*.' . . . As plaintiffs 'arbitrary and capricious'

claims don't invoke any other statute, plaintiffs have no standing to raise them under section 702" (quoting 5 U.S.C. § 702)).[4]

Arizona's standalone APA claims are not cognizable, and the State's fifth and sixth claims for relief should be dismissed.

## IV. Arizona's Take Care Clause and Impoundment Control Act Claims Fail

Arizona's seventh claim for relief asserts that Defendants have violated the Take Care Clause of the Constitution and the Impoundment Control Act of 1974 by failing to spend appropriated funds on construction of more border barrier. These allegations fail as a matter of law. Even assuming standing, the Take Care Clause does not provide a private right of action against the Executive, and the State may not circumvent Congress' prescribed mechanism for judicial review—the APA—by characterizing its claim as a constitutional violation. Similarly, only the Comptroller General of the United States may sue to enforce the provisions of the Impoundment Control Act—which protects Congress' power of the purse and not Arizona's interests in slowing population growth. Arizona's seventh claim for relief should be dismissed.

### a. The Take Care Clause does not create a cause of action.

Article II, Section 3 of the Constitution provides that the President "shall take Care that the Laws be faithfully executed." Arizona alleges that Defendants have violated this Take Care Clause by refusing to spend moneys that Congress has appropriated. First Am. Compl. ¶¶ 179-81, ECF No. 13. These allegations fail to state a claim for at least three reasons. First, the Take Care Clause is not judicially enforceable against the Executive. Second, the state may not use the Take Care Clause to bypass the APA's limits on review. And third, DHS's decisions to close out existing projects and engage in

---

[4] And for these same reasons, even if there were such an animal as a freestanding APA claim, Arizona's claims would still fail because the siting of border infrastructure and the exercise of DHS's return to contiguous territory authority are committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(2).

8

environmental planning for any future border infrastructure is not a "refus[al] to spend moneys that Congress has appropriated."

For over 150 years, the Supreme Court has adhered to the rule that "the duty of the President in the exercise of the power to see that the laws are faithfully executed" is not judicially enforceable. *Mississippi v. Johnson*, 71 U.S. 475, 499 (1866); *accord id.* at 501 (courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (holding that it would be improper for the courts to police the President's duty to "take Care that the Laws be faithfully executed" (citation omitted)). As far as Defendants can tell, no court has ever held that the Take Care Clause provides a mechanism to obtain affirmative relief against the Executive. *Cf. Citizens for Resp. & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 130 (D.D.C. 2018), *aff'd*, 924 F.3d 602 (D.C. Cir. 2019) ("Whether claims brought directly under the Take Care Clause are even justiciable is open to debate."); *Am. Fed'n of Gov't Employees, AFL-CIO v. Trump*, 318 F. Supp. 3d 370, 439 (D.D.C. 2018), *rev'd and vacated on other grounds,* 929 F.3d 748 (D.C. Cir. 2019) ("As an initial matter, it is not at all clear that a claim under the Take Care Clause presents a justiciable claim[…]"). Courts confronted with the question have either failed to resolve it or else answered in the negative.

*In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013), does not help the State. First Am. Compl. ¶ 179, ECF No. 13. There, in granting mandamus, the D.C. Circuit held that the Nuclear Regulatory Commission's refusal to move ahead with the Department of Energy's license application for a nuclear waste storage facility at Yucca Mountain in Nevada violated the Nuclear Waste Policy Act. *Aiken County*, 725 F.3d at 384-86. The court did not suggest that the Commission's failure to act violated the Take Care Clause or that the Take Care Clause provides a cause of action. Rather, the court discussed how the Take Care Clause provides the President with "significant independent authority to assess the constitutionality of a statute" and so sometimes may permit "the President (and subordinate executive agencies supervised and directed by the President) [to] decline to

follow [a] statutory mandate or prohibition if the President concludes that it is unconstitutional." *Id.* at 261. The government has not argued that appropriations by Congress for border infrastructure are unconstitutional, and so *Aiken County* has nothing to say here.

The Court should also reject Arizona's Take Care Clause claim as an impermissible attempt to circumvent the limitations on APA review. Arizona's claim challenges DHS's spending decisions. *See* First Am. Compl. ¶¶ 81-82 (alleging DHS has not spent funds appropriated to the agency by the Consolidated Appropriations Act of 2020 and Consolidated Appropriations Act of 2021); *see also* Defs.' Opp'n Ex. 3 ECF No. 24-3 and Defs.' Opp'n Ex. 4 ECF No. 24-4. Congress, through the APA, 5 U.S.C. §§ 701-706, has provided the mechanism for review of agency actions. The State may not circumvent APA review and its limitations (*e.g.*, the finality requirement, the zone-of-interests test, and the highly deferential "arbitrary and capricious" standard of review) under the guise of a constitutional claim. *See, e.g.*, *Dalton v. Specter*, 511 U.S. 462, 472 (1994) (rejecting the argument that "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution"). The Constitution is implicated if executive officers rely on it as an independent source of authority to act—which is not the case here—or if the officers rely on a statute that itself violates the Constitution, also not the case here. *Id.* at 473 & n.5. But claims alleging that "the President has exceeded his statutory authority are not 'constitutional' claims." *Id.* at 473; *see* First Am. Compl. ¶ 180 (alleging Take Care Clause violation because Defendants are "refusing to proceed with the statutorily mandated program"). Were it otherwise, any plaintiff could bypass the APA—and, indeed, any statutory limits on review—by framing a claim against the government as a violation of the Take Care Clause.

Finally, DHS has violated no statute by reaching the decisions to prioritize closing out existing border barrier projects and to engage in environmental planning before building more border barrier. Defs.' Opp'n Ex. 4, 4-5. Arizona, citing a letter sent by

several United States Senators, argues that the Consolidated Appropriations Acts of 2020 and 2021 provided nearly three billion dollars for border barrier construction. First Am. Compl. ¶¶ 81-82. But the State offers no theory as to how DHS's June 9, 2021 Border Wall Plan—which explains how those funds will be used—violates those laws or any others. *See* Defs.' Opp'n Ex. 4. The Secretary of Homeland Security has broad discretion over the siting and construction of border infrastructure. *See* IIRIRA, Pub. L. No. 104–208, § 102(b), 110 Stat 3009, 554-55. DHS does not violate the appropriations acts or the Take Care Clause by using its appropriated funds to close out existing projects or to prepare environmental reviews to guide future exercises of that discretion.

In sum, the Take Care Clause is not judicially enforceable and, in any event, cannot be used to recast statutory claims against federal agencies as constitutional violations. Even if considered, Arizona's allegations do not state a plausible claim for relief because DHS has violated no law by using appropriated funds to close out existing border barrier projects or by deciding to carry out environmental reviews before approving future projects. Arizona's Take Care Clause claim should therefore be dismissed under Rule 12(b)(6).

### b. Arizona cannot state a claim under the Impoundment Control Act.

Arizona alleges that the Impoundment Control Act of 1974, 2 U.S.C. §§ 681-88, "broadly prohibits the President from refusing to expend moneys that Congress has appropriated," First Am. Compl. ¶ 182, and that Defendants have violated the Act through "non-expenditure of funds appropriated for border wall construction." *Id.* ¶ 184. This claim fails for at least three reasons. First, the Impoundment Control Act confers no private right of action. Second, Arizona's alleged injuries fall outside the zone of interests protected by the Act. And third, the delays in DHS's obligation and expenditure of appropriated funds are programmatic delays, not impoundments.

The Impoundment Control Act does not create a private right of action. Just the opposite; 2 U.S.C. § 681 provides that "[n]othing contained in this Act, or in any amendments made by this Act, shall be construed as . . . affecting in any way the claims

11

or defenses of any party to litigation concerning any impoundment." As one court explained, "[t]his section represents a rather blatant disclaimer of any Congressional design to provide for a private right of action." *Pub. Citizen v. Stockman*, 528 F. Supp. 824, 828 (D.D.C. 1981). The Act also empowers the Comptroller General "to bring a civil action in the United States District Court for the District of Columbia" to enforce the Act. 2 U.S.C. § 687. "It is a fundamental axiom of statutory construction that where a statute 'limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *Pub. Citizen*, 528 F. Supp. at 828 (quoting *Botany Worsted Mills v. United States*, 278 U.S. 282, 289 (1929)). Read together, Congress' express disavowal of any private right of action—and express grant of authority to the Comptroller General— foreclose Arizona's attempt to sue under the Act. *See id.* at 829-30 (discussing the legislative history of the Act); *Rogers v. United States*, 14 Cl. Ct. 39, 50 (1987), *aff'd*, 861 F.2d 729 (Fed. Cir. 1988) ("Although the Impoundment Control Act does manifest congressional disapproval of unauthorized impoundments by the Executive Branch, an examination of the statute indicates that Congress did not intend to create a private cause of action in cases of unauthorized impoundments. Instead, Congress expressly provided that lawsuits based on the Impoundment Control Act must be brought by the Comptroller General in the United States District Court for the District of Columbia.").

Even if Arizona could sue under the Impoundment Control Act, Arizona's alleged injuries fall outside the Act's zone of interests. The zone-of-interests test limits causes of action, requiring the plaintiff to show that his alleged injuries fall within the "zone of interests" Congress sought to protect in enacting a statute. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014); *see also Bennett v. Spear*, 520 U.S. 154, 175-76 (1997) (explaining that the zone-of-interests requirement must be applied "by reference to the particular provision of law upon which the plaintiff relies"). The Impoundment Control Act protects Congress' power of the purse from Executive overreach. Nothing in the Act suggests an intent to protect Arizona from the alleged impacts of population growth.

12

Finally, the nonpartisan Government Accountability Office (GAO)—headed by the Comptroller General, "an agent of the Congress," *Bowsher* v. *Synar*, 478 U.S. 714, 731 (1986) (citation omitted)—recently concluded that DHS did not violate the Impoundment Control Act by halting border wall construction for more review. *See* GAO Decision Ex. 1 at 1; *see also Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 201 (D.C. Cir. 1984) (Scalia, J.) (stating that the GAO's conclusion reflects the "expert" view of an independent arm of Congress on fiscal issues that the Court should "prudently consider"). As the GAO concluded, any delays in expenditures from stakeholder engagement and environmental review are programmatic delays, not impoundments. GAO Decision Ex. 1 at 11-12. Arizona argues that the GAO erred because "NEPA required Defendants to undertake NEPA analysis *before* taking irreversible action such as terminating contracts." First Am. Compl. ¶ 184, ECF No. 13. (emphasis in original). But the only contracts terminated in Arizona were those funded through *DoD's* Drug Interdiction and Counter-Drug Activities authority at 10 U.S.C. § 284. Defs.' Opp'n Ex. 1 ¶¶ 6-14, ECF No. 24-1. Those terminations have nothing to do with Congress' appropriations to *DHS*.

Arizona also argues that DHS has not "published any draft EAs or EIS[es] in the Federal Register, or notified the public of their intent to do so[,]" and so DHS's "response to GAO is thus pretextual and cannot withstand scrutiny." First Am. Compl. ¶ 185. This statement both misunderstands the publicly available DHS plan and the timeline for NEPA analysis. Under its plan, DHS intends to first use its border infrastructure appropriations to cover cost overruns and closeouts for existing projects, including those soon to be turned over by DoD. Defs.' Opp'n Ex. 4, 3-5, ECF No. 24-4. For DHS's work on DoD military construction funded barrier projects (10 U.S.C. § 2808), DHS will engage in standard environmental planning including taking certain actions consistent with NEPA. *Id.* at 4. Because NEPA was waived for the DoD counter-drug projects (10 U.S.C. § 284), DHS has no NEPA obligation for those activities. Still, DHS intends to engage in standard environmental planning where appropriate. *Id.* at 4-5. DHS will use

any remaining fiscal year 2021 appropriations "to begin the sequential project planning process for the next highest priority barrier segments," which "will begin with environmental planning that complies with NEPA." *Id.* at 5; *see also* GAO Decision Ex. 1 at 13 ("the previous Secretary of Homeland Security exercised statutory authority to waive laws such as NEPA . . . . [t]he current Secretary of Homeland Security will not . . . . [t]herefore, prior to obligating 2021 barrier funds on contracts for new projects, DHS must first comply with applicable laws."). The public participation process for future projects will begin at the scoping stage and will eventually include publication of draft EAs or EISes.

Thus, Arizona lacks a cause of action to sue for any alleged violation of the Impoundment Control Act, and the State's alleged injuries fall outside the zone of interests protected by the Act. The State has also failed to allege facts supporting a plausible violation of the Act because, as the GAO found, the decision to not obligate funds pending environmental planning is a programmatic delay, not an impoundment. The Court should dismiss this claim under Rule 12(b)(6).

## CONCLUSION

Arizona has not met its burden to prove a concrete injury-in-fact fairly traceable to the actions of Defendants. Even if Arizona had standing, none of its theories are cognizable. This Court should dismiss the State's First Amended Complaint.

Submitted this 1st day of October, 2021,

>TODD KIM
>Assistant Attorney General
>U.S. Department of Justice
>Environment & Natural Resources Division
>
>*/s/ Tyler M. Alexander*
>TYLER M. ALEXANDER
>Trial Attorney
>Natural Resources Section
>150 M St. NE, Third Floor
>Washington, D.C. 20002
>(202) 598-3314

tyler.alexander@usdoj.gov

*Attorneys for Defendants*