**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
Robert J. Makar (No. 33579)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8958
Joe.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
Robert.Makar@azag.gov
*Attorneys for Plaintiff State of Arizona*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| State of Arizona, | No. 2:21-cv-00617-DWL |
| Plaintiff, | **Response to Defendants' Motion to Dismiss (Doc. 27)** |
| v. |  |
| Alejandro Mayorkas in his official capacity as Secretary of Homeland Security; United States Department of Homeland Security; Troy Miller in his official capacity as serves as Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection; Tae Johnson in his official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement; United States Department of Defense; Lloyd Austin in his official capacity as Secretary of Defense. |  |
| Defendants. |  |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

LEGAL STANDARD ......................................................................................... 2

ARGUMENT ...................................................................................................... 3

I.    Arizona Has Standing To Assert Its Claims ............................................. 3

II.   Arizona's NEPA Claims Should Proceed Under the Arguments Set Forth In Arizona's PI Reply ............................................................................. 5

III.  Arizona's APA Claims Are Cognizable ................................................... 7

      A.    The Border Wall Termination Is Reviewable ............................... 9

      B.    Arizona's MPP Challenge Is Reviewable .................................. 11

IV.   Arizona's Claim Under The Take Care Clause Should Proceed ........... 12

      A.    Arizona's Take Care Clause Claim Is Justiciable ...................... 12

      B.    Arizona's Take Care Clause Claim Does Not "Circumvent" APA Review .............................................................................. 14

      C.    Arizona Has Adequately Plead A Take Care Clause Claim ....... 16

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) .......................................................................... 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 4

*Biden v. Texas*,
  No. 21A21, 2021 WL 3732667 (U.S. Aug. 24, 2021) ................................. 11

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ...................................................................................... 8

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) ...................................................................... 6

*Center for Biological Diversity v. Bernhardt*,
  946 F.3d 553 (9th Cir. 2019) ...................................................................... 14

*Citizens for Resp. & Ethics in Washington v. Trump*,
  302 F. Supp. 3d 127 (D.D.C. 2018) ........................................................... 13

*City & Cty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ........................................................ 14, 15, 16

*Dep't of Com. v. New York*,
  139 S. Ct. 2551 (2019) .............................................................................. 9, 11

*DHS v. Regents of the Univ. of California*,
  140 S. Ct. 1891 (2020) ........................................................................ 7, 8, 9

*Disability Rts. Montana, Inc. v. Batista*,
  930 F.3d 1090 (9th Cir. 2019) ................................................................. 2, 16

*Hanly v. Mitchell*,
  460 F.2d 640 (2d Cir. 1972) ......................................................................... 4

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .................................................................................. 8, 10

*ILWU v. Meese*,
  891 F.2d 1374 (9th Cir. 1989) ...................................................................... 6

*In re Aiken Cty.*,
  725 F.3d 255 (D.C. Cir. 2013) .................................................................... 16

*In re Border Infrastructure Env't Litig.*,
  915 F.3d 1213 (9th Cir. 2019) ...................................................................... 6

*Int'l Bhd. of Teamsters v. U.S. Dep't of Transportation*,
  861 F.3d 944 (9th Cir. 2017) ........................................................................ 8

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) ............................................................................... 8, 10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................... 13

*Make the Rd. New York v. Pompeo,*
   475 F. Supp. 3d 232 (S.D.N.Y. 2020) ........................................................... 15

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) .................................................................................... 4, 5

*Oregon Nat. Res. Council v. Thomas,*
   92 F.3d 792 (9th Cir. 1996) ............................................................................ 8

*Organized Vill. of Kake v. U.S. Dep't of Agric.,*
   795 F.3d 956 (9th Cir. 2015) .......................................................................... 8

*OSG Bulk Ships, Inc. v. United States,*
   132 F.3d 808 (D.C. Cir. 1998) ........................................................................ 6

*Regents,* 140 S. Ct. at 1907 (2020) .................................................................... 15

*Southcentral Found. v. Alaska Native Tribal Health Consortium,*
   983 F.3d 411 (9th Cir. 2020) .......................................................................... 2

*State of Mississippi v. Johnson,*
   71 U.S. 475 (1866) ....................................................................................... 13

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ....................................................................................... 3

*Texas v. Biden,*
   10 F.4th 538 (5th Cir. 2021) ............................................................... 5, 6, 11, 12

*Texas v. United States,*
   __ F.Supp.3d __, No. 6:21-CV-16, 2021 WL 3683913 (S.D. Tex. Aug. 19, 2021) 5, 15

*Texas v. United States,*
   809 F.3d 134 (5th Cir. 2015) .......................................................................... 8

*Trout Unlimited v. Pirzadeh,*
   1 F.4th 738 (9th Cir. 2021) ............................................................................. 8

*United States v. Texas,*
   577 U.S. 1101 (2016) .................................................................................... 14

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) ....................................................................................... 2

*Zivotofsky ex rel. Zivotofsky v. Clinton,*
   566 U.S. 189 (2012) ...................................................................................... 14

**STATUTES**

10 U.S.C. § 284 ........................................................................................................ 10

2 U.S.C. § 681-688 .................................................................................................. 13

5 U.S.C. § 701(a)(2) .................................................................................................. 8

5 U.S.C. § 702 ............................................................................................................ 7

5 U.S.C. § 706 ............................................................................................................ 7

8 U.S.C. § 1103 note ................................................................................................ 10

8 U.S.C. § 1103 note (c)(1) ....................................................................................... 6

Pub. L. No. 115-141, 132 Stat. 348 (2021) ............................................................. 12

Pub. L. No. 116-93, 133 Stat. 2317 (2019) ............................................................. 10

Pub. L. No. 116-93, 133 Stat. 2511 (2019) ............................................................. 12

**OTHER AUTHORITIES**

Aris Folly, *Senate Republicans call on colleagues to reject government spending bills without border wall funding*, The Hill (Nov. 15, 2021), https://thehill.com/policy/finance/budget/581622-senate-republicans-call-on-colleagues-to-reject-government-spending ............................................................... 17

Charlotte Butash, *Impeachment as an Alternative to Judicial Review*, Lawfare (Oct. 31, 2019), https://www.lawfareblog.com/impeachment-alternative-judicial-review .......... 2

DHS, *Border Wall Plan Pursuant to Presidential Proclamation 10142* (June 9, 2021), https://www.dhs.gov/sites/default/files/publications/21_0611_dhs_security_border_wall_plan.pdf .......................................................................................................... 16

DHS, *Termination of the Migrant Protection Protocols* (Oct. 29, 2021), https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-memo.pdf ............................................................................................................... 1

Press Release, DHS, *DHS to Address Life, Safety, Environmental, and Operational Considerations for Specific Border Barrier Projects* (July 27, 2021), https://www.dhs.gov/news/2021/07/27/dhs-address-life-safety-environmental-and-operational-considerations-specific-border ..................................................... 2

**INTRODUCTION**

Arizona brought this lawsuit against the federal government raising several challenges under the National Environmental Policy Act ("NEPA"), the Constitution, and the APA, including: (1) NEPA claims challenging Defendants' failure to prepare environment impact statements ("EIS") for several policies, including the halting of construction of border barriers ("Border Wall") and cancellation of contracts regarding the same, and the termination of the Migrant Protection Protocol ("MPP") program,[1] as well as the Defendants' overall policy concerning border enforcement; (2) APA claims challenging the arbitrary and capricious termination of Border Wall projects and the termination of the MPP; and (3) constitutional and statutory claims challenging Defendants' failure to spend money appropriated by Congress on Border Wall projects.

Defendants' motion to dismiss offers little substantive defense of these actions. Instead, Defendants have run the same worn-out playbook they ran in opposing the State's motion for a preliminary injunction (and in a multitude of other APA suits). Roughly speaking: no one ever has standing to challenge federal government action, everything is committed to agency discretion, and nothing is ever reviewable under the APA. But these recycled objections largely fail for the reasons explained previously and as set forth below. And they again show why judicial review is so critically important to ensuring the rule of law prevails in the United States: in Defendants' view, for example, they have unreviewable power to "implement" an explicit Congressional allocation of money to build border barriers by refusing to build *any* such barriers. Once again, Defendants are "executing" laws by flouting them. And while Defendants have called on Congress to repeal those appropriations,[2] one wonders might fairly wonder why they even bothered if

---

[1] Defendants have reissued the MPP termination after the Fifth Circuit and Supreme Court upheld the Northern District of Texas's injunction against their previous attempt to terminate the program. *See* DHS, *Termination of the Migrant Protection Protocols* (Oct. 29, 2021), https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-memo.pdf. This new termination does not affect any of the questions surrounding this Motion to Dismiss, although Arizona may seek to supplement its complaint in the future to address it.

[2] *See, e.g.*, Press Release, DHS, *DHS to Address Life, Safety, Environmental, and*

their arguments here were correct: under them they have completely unreviewable power to effectively rescind those appropriations themselves, and Congressional repeal would be an empty formality.

Defendants' position that not even a scintilla of their actions here is reviewable by this Court is brazen and untenable. In essence, Defendants have reverted to Truman Administration's position in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), in which there were only "two limitations on the Executive power. One is the ballot box and the other is impeachment."[3] But President Truman's view did not prevail in *Youngstown Sheet*, and courts have long ago made clear that federal courts are a critical third limitation on executive action. And Defendants' actions here run afoul of it.

Because the State has sufficiently pled viable claims under the lenient notice-pleading standard of Rule 8, Defendants' motion to dismiss should be denied.

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(1), the district court must "construe all material allegations of fact in the complaint in favor of the plaintiff." *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 416–17 (9th Cir. 2020). Similarly, the standard for surviving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is that the plaintiff must provide merely "'a short and plain statement of the claim showing the pleader is entitled to relief'" which "'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1096 (9th Cir. 2019) (citation omitted). Again, any material questions of fact should be construed in favor of the plaintiff. *Id.*

---

*Operational Considerations for Specific Border Barrier Projects* (July 27, 2021), https://www.dhs.gov/news/2021/07/27/dhs-address-life-safety-environmental-and-operational-considerations-specific-border (stating "The Biden-Harris Administration continues to call on Congress to cancel remaining border wall funding and instead fund smart border security measures.")

[3] Charlotte Butash, *Impeachment as an Alternative to Judicial Review*, Lawfare (Oct. 31, 2019), https://www.lawfareblog.com/impeachment-alternative-judicial-review.

**ARGUMENT**

**I.     Arizona Has Standing To Assert Its Claims**

To have standing, "a plaintiff must show that [it] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

The State explained in detail why it has standing to assert these claims in Reply to its PI Motion (Doc. 29). In summary, Arizona has standing to assert all of its claims arising out of the Border Wall termination, the MPP, and Defendants' general southern border strategy, for two reasons.

*First*, the State provided specific allegations and provided reams of evidence for a host of impacts affecting the State which directly result from migration at wall gaps and from the migration caused by the termination of the MPP and Defendants' other policies. *See* PI Motion (Doc. 15) at 7-16.[4] These impacts are not remotely comparable to the impacts at issue in *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) and *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021), the primary cases relied on by Defendants. In both of those cases there was considerable attenuation between the 2012 DACA policy, subsequent immigration, and the alleged impacts. By contrast, here there is no need to extrapolate at all from either the termination of the border wall or the termination of the MPP to the impacts in question. Those impacts all are direct and immediate consequences.

With respect to the Border Wall, the State's allegations have been bolstered by considerable evidence that migrants have been and are crossing—in incredible and

---

[4]  To the extent that this Court might conclude that the State has not adequately alleged standing in the FAC, the evidence submitted in the preliminary injunction briefing provides extensive examples of the allegations that the State could further add by amendment to satisfy any concerns about the adequacy of the standing allegations if necessary.

unprecedented numbers—in the areas where Defendants have terminated border wall construction. *See, e.g.*, Napier Decl. at 3; Second Lamb Decl. at 2; Dannels Decl. at 2-3; *see also* PI Motion at 7-9; PI Reply at 10-11. Migrants damage the environment in crossing, *see* FAC ¶¶116-121, and by taking up residence in the State. *Id.* at ¶¶122-138. And the State alleged and provided specific evidence that migrants are encouraged to cross by the government's decision to terminate the MPP, amount to a catch-and-release policy at the border. *See, e.g.*, Makar Decl. Ex. G (explaining that many migrants come with the specific expectation that they will be able to abscond from their hearings); Napier Decl. at 4.

Furthermore, the MPP by its mere operation directly places additional migrants in the State, leading directly to the growth impacts Arizona has alleged and supported, which go unchallenged by the Defendants' motion. *See* 3d Makar Decl. Ex. MM ("160,000 illegal immigrants have been released [by DHS] into the U.S. … since March"). *See Hanly v. Mitchell*, 460 F.2d 640, 647 (2d Cir. 1972) (citation omitted) (NEPA '"must be construed to include protection of the quality of life for city residents. Noise, traffic, overburdened mass transportation systems, crime, congestion … all affect the urban 'environment.'"). The same is true with respect to Arizona's wildlife impacts. *See* FAC ¶¶ 139-142.

Defendants do not seriously contend that their actions will not affect Arizona wildlife, they only assert that such impacts will be positive. MTD at 5. It is not clear on what basis Defendants could make that assertion, since they have not prepared an EIS or any other environmental analysis. But in any case, it is irrelevant at this stage of the litigation, where Arizona's allegations must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

*Second*, with respect to Arizona's NEPA claims, Defendants barely even mention *Massachusetts v. EPA*—which found state standing in circumstances *far* more attenuated than here. *Massachusetts* held that states are entitled to "special solicitude" in the standing analysis, particularly when asserting procedural injuries. 549 U.S. 497, 520 (2007). In *Massachusetts*, the Supreme Court held that a State could "assert [a statutory procedural]

right without meeting all the normal standards for redressability and immediacy.'" *Id.* at 498 (citation omitted).

This analysis was recently confirmed in *Texas v. United States*, __ F.Supp.3d __, No. 6:21-CV-16, 2021 WL 3683913, at *9–42 (S.D. Tex. Aug. 19, 2021). In *Texas*, the court confronted a similar claim of injury based on migration caused by administration policy and stated that "the links between the States' injuries and the [challenged action] here are not perceptibly frailer than in *Massachusetts* and likely are firmer." 2021 WL 3683913, at *20. *See also Texas v. Biden*, 10 F.4th 538, 547–52 (5th Cir. 2021) (holding states had standing, *inter alia*, due to increased educational expenditures, health care expenses, and increased "costs on the state's correctional apparatus"). The same is true here and standing exists for the same reasons. Defendants' arguments about the alleged attenuation of Arizona's injuries all go to traceability, and they should be rejected in the special context of a State asserting a claim based on the denial of a procedural right.

Defendants' arguments bring nothing new. Arizona has standing because the federal government's actions directly have led to serious impacts on environmental health and safety in the State. The purpose of NEPA is to analyze such impacts before they occur, which was not done. Defendants cannot now hide behind their own failure to analyze such impacts and allege that they are not happening or that Defendants are not causing them. And that is particularly true as this Court is required to accept the State's allegations in its Complaint as true in this posture—not Defendants' *ipse dixits* expressed only in a legal brief, and not an EIS or EA.

## II. Arizona's NEPA Claims Should Proceed Under the Arguments Set Forth In Arizona's PI Reply

Defendants essentially incorporate by reference here the host of justiciability and jurisdictional arguments they raised to Arizona's NEPA claims in their response to Arizona's PI Motion. As explained in Arizona's PI Motion and Reply, none of these arguments hold water. *See* PI Motion at 18-28; PI Reply at 19-22. And they are even weaker

in this context, where the State's allegations must be accepted as true

First, Arizona's NEPA challenge to the termination of border wall construction should go forward notwithstanding the Secretary's waiver of NEPA compliance for wall *construction* under IIRIRA. DHS's authority to waive NEPA extends only to "ensure expeditious construction of barriers." 8 U.S.C. § 1103 note (c)(1). Defendants, however, seek to use the waivers for the precise *opposite* purpose. This attempt to expand the Secretary's waiver authority runs squarely contrary to the statute, as well as the text and purpose of the waivers themselves. PI Reply at 5-6. Similarly, Arizona's claim does not "aris[e] from" the waiver provision; Arizona challenges the permanent termination of construction, not the waivers, or the Secretary's authority to waive NEPA compliance for barrier construction. *In re Border Infrastructure Env't Litig.*, 915 F.3d 1213, 1221 (9th Cir. 2019). Defendants' other arguments against Arizona's NEPA challenge to the Border Wall termination fare no better, for the reasons stated in detail in Arizona's PI Reply. PI Reply at 8-9.

Second, Defendants' arguments against Arizona's NEPA challenge to the MPP should be rejected. These arguments are essentially the same arguments that DHS made to the Fifth Circuit in *Texas v. Biden*, 10 F.4th 548 (5th Cir. 2021). These arguments were rejected by that court and should be rejected here too. PI Reply at 21-23. In particular, the Defendants' attempt to shield their blanket construction halt under *Heckler* fails, because the *Heckler* presumption of unreviewability applies to challenges to individual decisions not to initiate enforcement actions, not sweeping policies of non-enforcement. *See, e.g., ILWU v. Meese*, 891 F.2d 1374, 1378 n.2 (9th Cir. 1989) (describing *Heckler* as applying to "an agency's refusal to prosecute or enforce a statute in a specific case"); *Bresgal v. Brock*, 843 F.2d 1163, 1169 n.1 (9th Cir. 1987) (same); *see also OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998) (explaining that "an agency's adoption of a general enforcement policy is subject to review," thereby distinguishing *Heckler's* presumption of unreviewability as applying only to individual cases of non-enforcement).

Finally, Arizona's programmatic challenge should proceed. As alleged in Arizona's

complaint, Defendants have previously recognized that their interlocking and related actions involving the southern border require programmatic treatment under NEPA. FAC ¶¶106-111. In addition, Arizona has alleged that Defendants are deliberately advancing policies as part of a program to increase migration. FAC ¶¶61-69. Accepted as true, this more than shows that some sort of programmatic treatment was appropriate here. PI Reply 19-21.

## III.    Arizona's APA Claims Are Cognizable

Defendants seek to dismiss Arizona's non-NEPA challenges to the border wall and the MPP terminations as "standalone APA claims." This misunderstands the scope of APA review and imposes a (false) requirement for Plaintiffs making APA challenges to allege separate statutory violations. This is not the law; the APA creates a "presumption of judicial review," and Defendants' rule would upend and reverse that presumption.

The APA states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The Supreme Court has explained that this provision establishes "basic presumption of judicial review for one suffering legal wrong because of agency action." *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (cleaned up). As explained above and in Arizona's PI Motion and PI Reply, Arizona has been adversely affected, and both the termination of border wall construction and the termination of the MPP are "agency action[s] under a relevant statute" within the meaning of the APA.

Defendants seem to argue (at 6-7) that the APA cannot apply unless the Plaintiff alleges a specific statutory violation. Not so. Section 706 expressly provides that a "reviewing court *shall* … hold unlawful and set aside agency action,… found to be … arbitrary, capricious, an abuse of discretion, *or* otherwise not in accordance with law." 5 U.S.C. § 706 (emphasis added). An agency violating a statute—*i.e.*, taking action "otherwise not in accordance of law"—is only *one* of several manners in which agencies can violate the APA, which is underscored by the use of the disjunctive "or." Agency action

that is "arbitrary and capricious," for example, violates the APA even if it does not specifically violate the underlying statute. Defendants' "standalone APA claim" arguments here thus flout the APA's actual text.

Instead, the cases Defendants rely on merely reaffirm that the APA does not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). *See also Oregon Nat. Res. Council v. Thomas*, 92 F.3d 792, 797 (9th Cir. 1996) ("But before any review at all may be had, a party must first clear the hurdle of § 701(a).") *Int'l Bhd. of Teamsters v. U.S. Dep't of Transportation*, 861 F.3d 944, 954 (9th Cir. 2017) ("Agency action committed to agency discretion by law is exempt from APA review."). That exception encompasses only a "limited category" of "administrative decisions traditionally left to agency discretion." *Regents*, 140 S. Ct. at 1905 (citing *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). And it is true that agency action may be committed to agency discretion implicitly when there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). But establishing this unreviewability is a "heavy burden" and "where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Texas v. United States*, 809 F.3d 134, 164 (5th Cir. 2015) (*quoting Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984))

None of those case stands for the expansive proposition espoused here: *i.e.*, that APA review is unavailable without a specific statutory violation. Indeed, several Supreme Court and Ninth Circuit decisions have reviewed agency action under the APA without identifying a specific statute violated by the agency. *See, e.g.*, *Regents*, 140 S. Ct. at 1905-07 (holding unlawful under APA decision to terminate DACA for failing to adequately address important factors bearing on decision); *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 758 (9th Cir. 2021) (concluding that "even though the statute contains a broad grant of discretion" because agency regulations or practice provided a judicially manageable standard "the decision is subject to judicial review under the APA"); *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 967 (9th Cir. 2015) (concluding that exemption

of national forest from roadless rule was not supported by reasoned explanation and so violated the APA).

These cases confirm the commonsense understanding that just because an agency has some discretion, their actions do not automatically fall within the narrow § 701(a)(2) exception to judicial review. Rather, if a statute, rule, or even agency practice imposes any meaningful limitations on agency authority, then the decisions of that agency are not within the committed-to-agency-discretion exception and are instead subject to general requirements of the APA, including limitations on reasoned decision making. For example, in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), the Supreme Court concluded that, because the Census Act "constrains the Secretary's authority to determine the form and content of the census" by, for example, circumscribing the Secretary's power to "collect information through direct inquiries" or by imposing "a duty to conduct a census that is accurate," the Department of Commerce was subject to APA requirements. *Id.* at 2568–69. The Court went on to remand the agency's decision considering its pretextual nature—not because it violated the express provisions of any statute. *Id.* at 2575–76.

Similarly, in *Regents*, the Supreme Court rejected the argument that DACA—and the rescission of DACA—was simply a nonenforcement policy and immune from judicial review. Rather, DACA "created a program for conferring affirmative immigration relief." *Regents*, 140 S. Ct. at 1906. This program was itself sufficient to "provide[] a focus for judicial review" such that it could be subject to the strictures of the APA. *Id.* at 1906–07. And ultimately the Court struck down the rescission of DACA for failing to be adequately explained and failing to consider an important aspect of the problem. *Id.* at 1910–11.

The only questions then are whether the Border Wall and MPP Terminations fit within this "narrow" exception in § 701(a)(2) to the APA's presumption of judicial review. *Regents*, 140 S. Ct. at 1905. They do not.

**A.  The Border Wall Termination Is Reviewable**

Defendants' decision to terminate border wall construction does not fit within the narrow exception to reviewability articulated in § 701(a)(2). Defendants argue that the

statutory authority commanding the Secretary to build fencing—see Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, § 564(2)(D), 121 Stat. 1844, 2091 (2007) (codified at 8 U.S.C. § 1103 note)—provides "no meaningful standard against which to judge the agency's exercise of discretion" and therefore the agency's decision is not reviewable under the APA. *Heckler*, 470 U.S. at 830.

But these statutes constrain the Defendants' authority in important ways. For instance, the section cited by Defendants states that the Secretary of DHS shall "take such actions as may be necessary to install additional physical barriers …*to deter illegal crossings*." 8 U.S.C. § 1103 note (emphasis added). This section also provides that the Secretary must identify "priority areas" where fencing would be "most practical and effective in deterring smugglers and aliens" and construct fencing in that area. *Id.* While this section expressly does not require the Secretary to construct fencing in any "particular location," it nonetheless provides "meaningful standard[s]" to guide judicial review. *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). In addition, other barriers were built under 10 U.S.C. § 284, which gives the Secretary of Defense the authority to "provide support for" "counterdrug activities" including the "construction of roads and fences…to block drug smuggling corridors."

Nothing in those provisions give DoD untrammeled discretion to act with impunity—its actions must be related to counterdrug activity and its authority to construct fences is limited to blocking drug smuggling corridors. And this is without even mentioning Congress's express demand to build border fencing in the Consolidated Appropriations Acts of 2020 and 2021, which Defendants have persistently ignored. *See* Pub. L. No. 116-93, 133 Stat. 2317 (2019) (allocating $1,375,000,000 for "construction of barrier system along the southern border").

While these sections give some discretion to the Secretary, they nonetheless provide "meaningful standards" to judge the Defendants' conduct, stating that Defendants should build barriers to "deter illegal crossings" and specifying specific areas and ways in which those barriers should be built. If anything, these provisions give more guidance to courts

than those found sufficient to convey reviewability in the Census Act. *See Dep't of Commerce*, 139 S. Ct. at 2569 (finding "meaningful standard" in language requiring the Secretary of Commerce to "conduct a census that is accurate and that fairly accounts for…representational rights.").

To illustrate the limitations on this discretion, DHS clearly could not, for example, build fencing surrounding the District of Arizona Courthouse, because such a wall would not "deter illegal crossings." The Secretary's decisions here are similarly unjustifiable and must be reviewed under the APA. According to the State's allegations—which presently must be accepted as true—the Secretary has finally determined to terminate all border wall construction, contrary to what DHS had studied and planned. FAC ¶78-79. None of the gaps in the wall was the product of "planning or reasoned decision-making" and the state of the border is "entirely arbitrary." *Id.* ¶86. Furthermore, the purpose of Defendants' actions here, squarely contrary to the statutory authority to build the fencing project in the first place, was to *increase* migration. *Id.* ¶88-89. This final decision was taken not under some untrammeled authority but rather under the Defendant's limited statutory authority to construct fencing to *reduce* migration and to *block* drug smuggling corridors.

Nor does anything in Arizona's claim seek to have border fencing built in any "particular location." Rather, Arizona challenges this entirely arbitrary and unplanned action to terminate wall construction *altogether*. Because the statute provides sufficiently meaningful limitations on the Secretary's discretion, Arizona's challenge should be considered reviewable.

**B. Arizona's MPP Challenge Is Reviewable**

Arizona's challenge to the MPP is also reviewable, as confirmed by the Fifth Circuit in *Texas v. Biden*, 10 F.4th at 551 and implicitly affirmed by the Supreme Court when it refused to stay the injunction in that case in *Biden v. Texas*, No. 21A21, 2021 WL 3732667, at *1 (U.S. Aug. 24, 2021). The Fifth Circuit expressly found the termination of the MPP was not a mere nonenforcement decision. As the court explained: "the termination of MPP is more than a non-enforcement policy, just like the DACA program at issue in

Regents….MPP was a government program—replete with rules procedures and dedicated infrastructure." *Texas v. Biden*, 10 F.4th at 551. Ultimately, the Fifth Circuit determined that Texas had shown a strong likelihood of success on the merits because the Secretary's termination of the MPP had failed to consider "relevant factors" and "important aspects of the problem." *Id.* at 552–53.

Arizona's claim here is fundamentally identical to that held meritorious by both the Fifth Circuit expressly and the Supreme Court implicitly when it denied Defendants' request for a stay. This Court should follow those courts and allow the claim to proceed.

## IV.   Arizona's Claim Under The Take Care Clause Should Proceed

Defendants make three arguments against Arizona's Take Care Clause Claim. First, they argue that such claims are non-justiciable entirely. Second, they assert that the claim is an "impermissible attempt to circumvent" APA review. Third, Defendants argue that no violation has taken place. Each of these arguments fails as a matter of law and when faced with Arizona's allegations.

### A.   Arizona's Take Care Clause Claim Is Justiciable

Arizona's Take Care claim is straightforward. Arizona alleges that Congress appropriated nearly $3 billion for "the construction of a barrier system along the southwest border." FAC at ¶ 82 (citing Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, 133 Stat. 2511 (2019); Consolidated Appropriations Act, 2021, Pub. L. No. 115-141, 132 Stat. 348 (2021)). In spite of this affirmiative obligation, Defendants have—consistent with the President's proclaimation—determined not to spend these funds, decided to illegally impoud them, and have resorted to repeatedly asking Congress to relieve them from this known illegallity by cancelling the funding. *Supra* at 1-2 n.2. This blatant violation of the law is itself sufficient to rule on Arizona's APA claim against the refusal to build the Border Wall. But, in addition, no more clear violation of the Take Care Clause of the Constitution could be imagined than this attempt to dispense with a law of Congress.[5]

---

[5] Arizona's reference to the Impoundment Control Act (ICA) is not meant to establish a claim separate from the Take Care Clause. Rather, the ICA serves to illustrate that the Executive has no discretion to unilaterally impound these funds. Congress has affirmatively and authoritatively set forth a process, which has not been followed here. 2

Defendants cite two Supreme Court cases which allegedly stand for the proposition that this claim is not cognizable. First is *State of Mississippi v. Johnson*, 71 U.S. 475, 499 (1866). That case addressed an attempt to enjoin the President to attempt to force him to enforce and execute the Reconstruction Acts, recently passed by Congress. *Id.* at 475. This case is not applicable—the problem in that case was that the Plaintiffs sought to enjoin the President of the United States, not that they brought their suit under the Take Care Clause. A subsequent case—also cited by Defendants (at 9)—explained this important distinction, explaining that it was at best "unclear" whether *Johnson* foreclosed Take Care claims, especially those not against the President. *See Citizens for Resp. & Ethics in Washington v. Trump*, 302 F. Supp. 3d 127, 139 (D.D.C. 2018), *aff'd*, 924 F.3d 602 (D.C. Cir. 2019), and *aff'd*, 924 F.3d 602 (D.C. Cir. 2019). That case went on to endorse a completely different reading of *Johnson*, although it felt it did not need to formally reach the issue: "it may be the case that Johnson is best understood as a political question case, rather than one about the Take Care Clause in particular. The D.C. Circuit has hinted at such an understanding, stating that the Supreme Court ultimately dismissed the case "on the ground that it presented a political question." *Id.*

The second case cited by Defendants is *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992), which held that Congress could not, by statute, convey standing for generalized grievances under Article III. But this case—even less than *Johnson*—does not speak to whether a Plaintiff can bring a claim under the Take Care Clause. Arizona is not attempting to assert some kind of generalized grievance against the Executive—rather, Arizona has suffered an particularized and concrete injury by way of the Defendants' violation of their constitutional duty to expend money appropriated by Congress for a single purpose. Nothing in *Lujan* suggests that when individualized injuries are at stake due to a constitutional violation, there is no remedy available.

At best, the authorities cited by Defendants' state that it is "unclear" whether some Take Care claims against the President are be justiciable. *Cf. United States v. Texas*, 577

---

U.S.C. § 681-688 (establishing congressional oversight when the Executive defers budget authority).

U.S. 1101 (2016) (specifically directing parties to address the issue of whether DACA "violates the Take Care Clause of the Constitution"). But it is simply not true that courts have not entertained these claims. Rather, in *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019), the Ninth Circuit rejected—but not on jurisdictional grounds—a claim brought under the Take Care alleging that the Department of the Interior should have reinstated a rule rescinded under the Congressional Review Act. *Id.* at 561–62. The Court expressly stated that it was "not barred from considering CBD's constitutional claim" which alleged that the CRA and joint resolution impinged on the Executive's authority and violated separation of powers principles. *Id.* at 562. While CBD's claim is undoubtedly different in significant ways from Arizona's, the Court's decision to consider a cause of action under the Take Care Clause against an executive agency nonetheless shows the enforcability of that clause in court. *See also City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018) (concluding that Executive Order which directs agencies to withhold funds appropriated by Congress violates the separation of powers, including the Take Care Clause).

Nor would Defendants' position on the non-justiciability of Take Care Clause claims comport with the Supreme Court's admonition that "the Judiciary has a responsibility to decide cases properly before it, even those it would gladly avoid." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012). Arizona has suffered a particularized and concrete injury as a result of the Defendants' failure to comply with their constitutional responsibilities, the case is ripe, and there is adversity. Accordingly, this claim should go forward despite that Take Care Clause claims are rare.

### B.  Arizona's Take Care Clause Claim Does Not "Circumvent" APA Review

Defendants next argue that Arizona's Take Care claims circumvent APA review by challenging agency action through an avenue other than the APA. MTD at 9-10. According to Defendants, Arizona's Take Care claim would imply that any party could bypass the APA by simply framing a claim against the government as a violation of the Take Care Clause. *Id.* at 10.

As an initial matter, Defendants' putative concern for potential circumvention of judicial review under the APA is a little rich given their contention that no such review is available for any of the State's APA claims here, or Texas's MPP claims, or any number of other immigration cases where the United States has repeatedly—and unsuccessfully—argued that APA review was completely unavailable. *See Texas v. United States*, 2021 WL 3683913 at \*20-42 (rejecting multiple reviewability arguments); *Regents*, 140 S. Ct. at 1905-07 (2020) (same). Here the State's Take Care claim validly complements the State's APA claims and is a validly pled alternative basis for invalidating Defendants' Border Wall Construction Termination. There is nothing that prevents agency action from violating *both* the Constitution *and* the APA.

In any event, Defendants' arguments misunderstand the State's Take Care claim. A Take Care claim only arises when the Executive violates his duty to enforce the law and, by inaction, attempts to achieve a policy goal contrary to that set by Congress. *See, e.g.*, *City & Cty. of San Francisco*, 897 F.3d at 1234 ("[T]he obligation is an affirmative one, meaning that failure to act may be an abdication of the President's constitutional role."). As the SDNY has explained, "[u]nlike in *Dalton*, Plaintiffs' contention is not that the President simply did not fully comply with a congressionally prescribed process, Rather, Plaintiffs claim that the President's actions affirmatively displaced a congressionally mandated" process. *Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232, 258–59 (S.D.N.Y. 2020). This displacing of the Congressional mandate, "implicate[s] constitutional separation of powers concerns not present in *Dalton*" and is properly concisdered a constitutional claim. *Id.* Accordingly, Take Care claims are necessarily limited to a specific set of cases. The Take Care Clause applies where the Executive is subject to a particular obligation and, under the guise of nonenforcement (as in DACA) or "prioritization" (as here) or some other purportedly discretionary authority, the Executive is displacing that obligation and pursuing a policy contrary to Congress's express enactments.

Notwithstanding Defendants' assertions, such a claim does not arise in an ordinary

case where an agency acts in excess of their statutory authority, but it does apply where the agency seeks to dispense with a law in order to pursue some contrary policy goal. If the executive is allowed to flout Congress's express command in the guise of discretion, the Take Care Clause is implicated and a constitutional claim is present. *Cf. In re Aiken Cty.*, 725 F.3d 255, 267 (D.C. Cir. 2013) ("It is no overstatement to say that our constitutional system of separation of powers would be significantly altered if we were to allow executive and independent agencies to disregard federal law in the manner asserted… unless and until Congress authoritatively says otherwise."). *See also San Francisco*, 897 F.3d at 1233-34 (order which commanded agency to withhold grant money in contradiction to Congressional statutes violated Take Care Clause and separation of powers principles).

### C. Arizona Has Adequately Plead A Take Care Clause Claim

Finally, Defendants argue that DHS is merely "prioritizing" closing out existing border barrier projects and that DHS's June 9, 2021 Border Wall Plan is fully compliant with its obligations under Congress's extant appropriations statutes. MTD at 10-11. But that contention simply refused to accept the State's allegations as true, and thus necessarily fails at this stage. Arizona's complaint need only "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Disability Rights Montana, Inc.*, 930 F.3d at 1096.

Accordingly, it does not matter if DHS alleges that it will get to spending the $3 billion allocated for Southern Border fencing later. Arizona specifically alleged that Defendants have finally terminated the construction of the border wall and have no intention of spending that money. FAC ¶ 87. This follows from the President's repeated statements on the matter, as detailed in the complaint. *See* FAC ¶¶ 70-89. These allegations should be accepted as true, and on their face, they show that the President is illegally impounding the funds designated to construct border barriers.

Defendants' "Border Wall Plan" does nothing to undermine those allegations. The "plan" states the intent to spend "no more American taxpayer dollars" on a border wall. DHS, *Border Wall Plan Pursuant to Presidential Proclamation 10142* (June 9, 2021),

https://www.dhs.gov/sites/default/files/publications/21_0611_dhs_security_border_wall_plan.pdf. Many of the various projects entertained in the plan do not seem to be consistent with the express purpose of the funds provided in the Consolidated Appropriations Acts, but even if they were, it remains unclear from viewing the plan itself how the money allocated by Congress is specifically being spent and how that money traces back to the specific purposes for which it was allocated.

Indeed, it appears from existing debates in Washington that the money is not intended to be spent, as Democratic members of Congress are seeking to rescind $1.9 billion of this funding even as of a few days ago. *See* Aris Folly, *Senate Republicans call on colleagues to reject government spending bills without border wall funding*, The Hill (Nov. 15, 2021), https://thehill.com/policy/finance/budget/581622-senate-republicans-call-on-colleagues-to-reject-government-spending. If Defendants' claims were true that the Border Wall Plan is completely consistent with existing appropriations, why does it have to be changed by Congress, as Defendants have been requesting? *See also supra* at 1-2 n.2.

## CONCLUSION

Defendants' Motion to Dismiss should be denied.


RESPECTFULLY SUBMITTED this 18th day of November, 2021.


**MARK BRNOVICH**
**ATTORNEY GENERAL**


By: /s/ Drew C. Ensign
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    Robert J. Makar (No. 33579)
    *Assistant Attorneys General*
*Attorneys for Plaintiff State of Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

<u>s/ Drew C. Ensign</u>
*Attorney for the State of Arizona*