**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)
Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
Robert J. Makar (No. 33579)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8958
Joe.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
Robert.Makar@azag.gov
*Attorneys for Plaintiff State of Arizona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona,<br><br>Plaintiff,<br>v.<br>Alejandro Mayorkas in his official capacity as Secretary of Homeland Security; United States Department of Homeland Security; Troy Miller in his official capacity as serves as Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection; Tae Johnson in his official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement; United States Department of Defense; Lloyd Austin in his official capacity as Secretary of Defense.<br><br>Defendants. | No. 2:21-cv-00617-DWL<br><br>**Notice of Additional Factual and Legal Developments** |

# NOTICE

Arizona brought this lawsuit against the federal government asserting several claims under the National Environmental Policy Act ("NEPA") and the Administrative Procedures Act ("APA"), including challenging, among other things Defendants' halting of construction of border barriers ("Border Wall") and cancellation of contracts regarding the same without conducting any environmental analysis of that decision.

On December 20, 2021, Defendant DHS issued an update on their plans for border wall construction.[1] That press release, titled "DHS to Address Life, Safety, Environmental, and Remediation Requirements for Border Barrier Projects Previously Undertaken by DoD" makes clear that DHS intends to move forward with a variety of "activities necessary to address life, safety, environmental, and remediation requirements for border barrier projects previously undertaken by the Department of Defense (DoD) and located within the Border Patrol's San Diego, El Centro, Yuma, Tucson, El Paso, and Del Rio Sectors."[2]

Unlike in any of their previous statements, the December 20 statement stated that DHS would, as part of their "remediation," "clos[e] small gaps that remain open from prior construction activities and remediating incomplete gates."[3] What this means is uncertain; neither the government's statements nor media reports states how much additional border wall will be built as a result of Defendants' effort, but it makes clear this construction will be in the Tucson Sector in Arizona.[4] Significantly, this statement suggests that the

---

[1] *See* DHS, *DHS to Address Life, Safety, Environmental, and Remediation Requirements for Border Barrier Projects Previously Undertaken by DoD* (Dec. 20, 2021) *available at* https://www.dhs.gov/news/2021/12/20/dhs-address-life-safety-environmental-and-remediation-requirements-border-barrier

[2] *Id.*

[3] *Id.*

[4] *See, e.g.*, Clara Migoya, *Feds OK work to close border wall 'gaps' in Arizona as environmentalists raise concerns*, Arizona Republic (Dec. 30, 2021), https://www.azcentral.com/story/news/politics/border-issues/2021/12/30/feds-ok-closing-arizona-border-wall-gaps-upgrading-flood-prevention/8988357002/; Priscilla Alvarez, *DHS to close some gaps in border wall in ongoing effort to clean up Trump-era projects*, CNN (Dec. 20, 2021), https://www.cnn.com/2021/12/20/politics/border-wall/index.html

1

Defendants may be engaging in additional wall construction in a way which could quite possibly affect this litigation and/or the Court's jurisdiction.

The State has no reason to believe that DHS will fully uphold its duty to complete the remaining border wall barriers in Arizona sectors. But DHS's activities may exacerbate or ameliorate the State's harms—especially if the wall construction is not completed. At a minimum, it appears that DHS intends to alter the status quo while the State's request for a preliminary injunction to maintain that state of affairs is pending before this Court—and without informing this Court or the State of the changed circumstances. Given the undeniable relevance of DHS's recently announced actions on this case, these developments should have been disclosed by DHS to this Court and the State directly, rather than being discovered through newspaper coverage.

DHS's announcement that it intends to conduct environmental remediation measures all but concedes that there are significant environmental impacts resulting from its Border Wall that must be addressed under NEPA. *See* Doc. 21 at 1-2. Notably, the environmental impacts from DHS's announced activities are sufficiently severe that one Arizona-based environmental group has already sent DHS a notice of its intent to file suit under the Endangered Species Act ("ESA") and NEPA.[5] The Center for Biological Diversity contends (correctly) that remediation efforts are not encompassed within IIRIRA's authority to waive NEPA, which extends only to the construction of "the barriers and the roads."[6]

---

[5] *See* Center for Biological Diversity, Notice of Violations of the Endangered Species Act and National Environmental Policy Act in Relation to the Rio Grande Valley of Texas Levee Project (Dec. 21, 2021) *available at* https://www.biologicaldiversity.org/campaigns/border_wall/pdfs/Border_levee_wall_RGV_ESA_NEPA_NOI_122121.pdf

[6] *Id.* To the extent that Defendants' construction involves *completion* of the border wall, that would likely fit within the existing IIRIRA waivers. But, to the extent that DHS is conducting activities necessarily predicated on *not* building border barriers, and instead terminating construction of them, such activities necessarily fall outside the scope of DHS's waiver authority under IIRIRA. *See* Doc. 29 at 1-2, 5-8. Put differently, to the extent that DHS is acting to ameliorate the environmental consequences of *its (putative) decision* to *terminate* Border Wall construction, such activities do not fall within IIRIRA's waiver

DHS's announcement leaves unclear what exactly DHS's plan is. Previously, Defendants had stated unequivocally that there would be no additional wall construction in Arizona. For example, in their preliminary injunction response, Defendants attached a Declaration of Paul Enriquez, who stated that 18 miles of unfinished barrier construction remained on the Arizona border under DoD and DHS's initial plans for that construction. *See* Doc. 24-1. As Arizona has argued, much of this gap exists in the high-traffic areas surrounding Nogales. *See* Reply, Doc. 28 at 14 (citing Dannels & 2d Lamb Declarations). The Enriquez declaration also did not mention any additional wall construction, instead stating that "[a]dditional projects aimed primarily at life, operational safety, or environmental requirements may be approved and implemented going forward. Projects that are intended to mitigate environmental damage caused by border barrier construction also may be approved going forward." *Id.* Defendants also seemingly confirmed in their response to the State's Motion that the contracts for the construction of this 18-mile segment were "terminated" and that these segments had been "cancelled." *See, e.g.*, Doc. 24 at 13, 18, 23, 27, 32, 35, 39.

Defendants' public statements were plain on whether they intended to build additional walls. President Biden's Inauguration Day proclamation on the border wall states that "It shall be the policy of my Administration that no more American taxpayer dollars be diverted to construct a border wall."[7] Then, DHS's Border Wall Plan—promulgated pursuant to that proclamation—reaffirms their commitment to that policy. That Plan states that the only exception to the proclamation is the 14-mile stretch of additional levee in the Rio Grande Valley in Texas, and goes on to say that DHS will use the appropriated funding only to "grad[e] roads and cut[] slopes to resolve drainage and

---

provision, and must be analyzed under NEPA and the ESA.

[7] *Proclamation on the Termination Of Emergency With Respect To The Southern Border Of The United States And Redirection Of Funds Diverted To Border Wall Construction*, Proclamation 10142, 86 Fed. Reg. 7225 (Jan. 27, 2021).

ponding;" "address[] exposed rebar;" and "install[] canal crossings." There is no mention in the plan of closing existing gaps.

This raises the question of whether, and to what extent, Defendants are planning on closing existing wall gaps in Arizona. Do they intend to complete the 18-mile gap Tucson sector referred to in their filings? If not, what gaps will remain after their construction? What is the timeframe for this construction? Do Defendants intend to comply with NEPA and the ESA in conducting this additional construction activities in Arizona? These and other questions are very important to this lawsuit and the State should obtain a timely answer addressing these issues.

In addition, DHS's December 20 announcement reiterates that "[t]he Biden-Harris Administration continues to call on Congress to cancel remaining border wall funding." *Supra* note 1. It is difficult to understand this statement as anything other than an acknowledgment that existing law requires construction of border barriers that the Administration refuses to build, thus providing further evidence in support of the State's claim alleging violations of the Take Care Clause and the Impoundment Control Act of 1974 (Count VII). *See* FAC ¶¶178-85.

This Court accordingly may wish to order Defendants to provide an update on their activities and explain the contours of their newly announced construction activities with specificity. Notably, the State filed a FOIA request on August 1, 2021, seeking information about construction activities that DHS had announced on July 27, 2021, along with any NEPA analysis performed in connection with them (which also would include this subsequent activity addressed in this notice). *See* Exhibit (attached).

DHS has yet to provide a single responsive document, even though FOIA's deadlines have now been blown multiple times over. *See* 5 U.S.C. §552(a)(6)(A) (requiring response in 20 business days). Therefore, if this Court is to obtain information about DHS's activities directly affecting this Court's equitable jurisdiction, it will likely need to order DHS to explain its activities or permit discovery.

4

1 | RESPECTFULLY SUBMITTED this 10th Day of January, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By <u>s/ Drew C. Ensign</u>
   Joseph A. Kanefield (No. 15838)
   Brunn W. Roysden III (No. 28698)
   Drew C. Ensign (No. 25463)
   Robert J. Makar (No. 33579)
    *Assistant Attorneys General*

*Attorneys for Plaintiff Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for parties that are registered CM/ECF users will be served by the CM/ECF system pursuant to the notice of electronic filing.

 s/ Drew C. Ensign
*Attorney for the State of Arizona*