**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)
Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
Robert J. Makar (No. 33579)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8958
Joe.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
Robert.Makar@azag.gov
*Attorneys for Plaintiff State of Arizona*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona,<br><br>      Plaintiff,<br><br>    v.<br><br>Alejandro Mayorkas in his official capacity as Secretary of Homeland Security; United States Department of Homeland Security; Troy Miller in his official capacity as serves as Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection; Tae Johnson in his official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement; United States Department of Defense; Lloyd Austin in his official capacity as Secretary of Defense.<br><br>      Defendants. | No. 2:21-cv-00617-DWL<br><br>**Motion For Jurisdictional Discovery** |

**INTRODUCTION**

On February 7, 2022, this Court denied the State's Motion for Preliminary Injunction. The Court determined, among other things, that the State had failed to carry its burden to show standing on its claim related to the termination of border wall construction. Doc. 47 at 14-26. The Court stated that "the State's evidence is insufficient to establish any causal connection to a degree of reasonable probability" between environmental harm to the State and the termination of the border wall construction in Arizona. *Id.* at 26. Because information related to this question is uniquely in the custody and control of the Federal government, the State respectfully moves for targeted jurisdictional discovery for the purpose of establishing its standing as to its claims regarding Defendants' Border Wall Construction Termination under NEPA, the APA, and the Take Care Clause.

As the Ninth Circuit has explained, jurisdictional discovery should be granted where "discovery on th[e] issue *might well* demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (emphasis added). Indeed, that court held that a district court had abused its discretion in denying jurisdictional discovery where a mere possibility ("might well demonstrate") of discovering useful evidence existed. *Id.* More than such a mere possibility is manifestly present here.

Indeed, this Court ordered discovery in *Arizona v. DHS*, No. CV-21-186—the *exact same* discovery sought here—which turned up evidence that this Court found sufficient to support the State's APA-based immigration claims. Far from being speculative, the State has every expectation that jurisdictional discovery will similarly produce sufficient evidence of standing here. At a bare minimum, the Ninth Circuit's "might well demonstrate" standard is met here, and the State's request should accordingly be granted.[1]

---

[1] Through this motion, the State seeks to be permitted to take jurisdictional discovery, but is not seeking to compel any particular discovery now, nor contesting the sufficiency of any of productions to take or seeking to overrule/strike any discovery-based objections. Therefore, Local Rule 7.2(j) does not appear to apply, and there does not appear to be any case law indicating that it does. This Court also did not hold Local Rule 2.7(j) applicable in *Arizona v. DHS*, No. CV-21-186, in which the State sought—and obtained—the same

1

**LEGAL STANDARD**

Courts have concluded that jurisdictional discovery is appropriate in this context. As the Ninth Circuit has explained, jurisdictional discovery should be granted where "discovery on th[e] issue *might well* demonstrate facts sufficient to constitute a basis for jurisdiction." *Harris Rutsky*, 328 F.3d at 1135 (emphasis added). "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (cleaned up). The Ninth Circuit has reversed a court's refusal to countenance jurisdictional discovery where such discovery would be merely "useful" for purposes of establishing federal subject matter jurisdiction. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (denial of discovery not an abuse of discretion only when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction").

**ARGUMENT**

Here, there are several strong reasons to believe that discovery would reveal facts pertinent to jurisdiction as to the State's Border Wall Construction Termination claims. First, federal government officials are in the best position to know why, how often, and *where* migrants cross the border. As the Supreme Court has observed, federal government authority over migration to the United States is exclusive. *See Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are ... entrusted exclusively to Congress."); *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal Government."). CBP is the largest federal law enforcement agency and is charged with securing the nation's border, and it collects unparalleled statistics on border encounters and migration.[2] Accordingly, the federal government and personnel are likely to know and be able to speak to the environmental/migration impact of their decisions.

---

relief sought here.

[2]   *See, e.g.*,   CBP   Enforcement   Statistics   Fiscal   Year   2022,

Second, the Court's decision rests on its determination that "the State is asking the Court to speculate why aliens choose to enter the country illegally and whether the construction of certain impediments to their entry…would result in effective deterrence." Doc. 47 at 17-18. The federal government, in making the decisions challenged in this case, presumably considered these precise questions. Deterrence is certainly an "important aspect of the problem" confronting the agency with respect to its border decisions. *Cf. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The efficacy of the intervention which the administration decided to terminate—the border barrier—is the question presented by standing. The government clearly has a view on this question, and that view bears directly on the State's standing. The State should be permitted to explore Defendants' own documents regarding that view.

Third, the federal government has already announced that it is planning to undertake considerable environmental remediation on the Arizona-Mexico border. *See, e.g.*, Doc. 42-3 (describing DHS plan to "undertake activities necessary to address urgent life, safety, environmental, or other remediation required to protect border communities"). DHS likely has specific information about which projects they plan to undertake on the Arizona border, why they are necessary, and appropriate context about environmental impacts. This information would shed light on the environmental impact of the government's border decisions, including the decision to terminate the border barrier construction.[3] And discovery is particularly appropriate as Defendants have completely stone-walled the State's FOIA requests—even after the State pointedly raised the issue in this Court *more than a month ago*. *See* Doc. 38 (Jan. 10, 2022) ("DHS has yet to provide a single responsive document [to the State's July 27, 2021 request], even though FOIA's deadlines have now been blown multiple times over").

---

https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics.

[3] The Defendants have yet to make clear specifically what actions are being taken and whether these remediation projects are necessary independent of the termination of the border barrier or because of that termination.

3

The discovery requested here is *precisely* the same as that which this Court ordered with respect to the State's challenge to the federal government's February 18, 2021 Interim Guidance. *See* Exhibit. As here, the Interim Guidance challenged involved the government raising challenges to this Court's jurisdiction and the State's standing. In the Interim Guidance case, this Court therefore ordered discovery the ultimately showed that the State had standing to pursue its challenge. *See Arizona v. DHS*, No. CV-21-00186-PHX-SRB, 2021 WL 2787930, at *7 (D. Ariz. June 30, 2021). Accordingly, here, the State moves for the court to issue an order permitting the State to:

- Serve five requests for production;
- Serve five interrogatories;
- Take up to three depositions;
- Obtain the administrative record.

This narrow scope of discovery—*far* less than what the rules authorize in typical civil cases—will shed light on the State's injury from the termination of the border barrier without imposing a substantial burden on the government and ensure the State's claims are not dismissed prematurely.

This case presents the important question of whether the termination of a large construction project—within the State and designed to protect it from unlawful migration-related harms—harms Arizona. The State should be permitted to further develop the evidence on this important question.[4]

**CONCLUSION**

For the foregoing reasons, this Court should grant the State's request for targeted jurisdictional discovery.

---

[4] This Court is not limited to considering the administrative record (which has not been produced) in ascertaining the State's standing. *See, e.g., Nw. Envir. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997). Indeed, courts routinely rely on extra-record evidence to support standing in APA cases. *See, e.g., Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010) (relying on declarations to find that plaintiffs had Article III standing in an APA case); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010) (same).

RESPECTFULLY SUBMITTED this 17th day of February, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By <u>s/ Drew C. Ensign</u>
   Joseph A. Kanefield (No. 15838)
   Brunn W. Roysden III (No. 28698)
   Drew C. Ensign (No. 25463)
   Robert J. Makar (No. 33579)
    *Assistant Attorneys General*

*Attorneys for Plaintiff Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of February, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for parties that are registered CM/ECF users will be served by the CM/ECF system pursuant to the notice of electronic filing.

 s/ Drew C. Ensign
*Attorney for the State of Arizona*