TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

TYLER M. ALEXANDER (CA Bar No. 313188)
Trial Attorney
Natural Resources Section
150 M St. NE, Third Floor
Washington, D.C. 20002
(202) 598-3314
tyler.alexander@usdoj.gov

*Attorneys for Defendants*

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| State of Arizona,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>　　　　Defendants. | Case No. 2:21-cv-00617-PHX-DWL<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY** |

## INTRODUCTION

Applying the Ninth Circuit's recent opinion in *Whitewater Draw*, this Court denied Arizona's Motion for a Preliminary Injunction because Arizona lacks standing to challenge Defendants' decision to terminate border wall construction and, alternatively, because NEPA does not apply to a decision to stop disturbing the environment. *Arizona v. Mayorkas*, No. CV-21-00617-PHX-DWL, 2022 WL 357348, at *6-15 (D. Ariz. Feb. 7, 2022). Citing inapposite authorities—and ignoring this Court's reasoning—Arizona now asks for "targeted jurisdictional discovery." Pl.'s Mot. for Jurisdictional Discovery 1, ECF No. 48 (Pl.'s Br.).

Like its border wall claims, the State's request for discovery is meritless. This Court held that Arizona's standing theory "overlooks that 'any number of variables might influence an alien's independent decision' to enter the country illegally and fails to show that 'aliens would do so *because of*' Defendants' failure to build portions of an incomplete border wall." *Arizona v. Mayorkas*, 2022 WL 357348, at *9 (quoting *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F. 4th 997, 1017 (9th Cir. 2021)). Arizona does not explain how discovery against the government could cure that failure. Nor does Arizona address the Court's alternative holding, which is independently dispositive of the State's border wall NEPA claim. So any discovery would be futile.

This Court should deny Arizona's motion for jurisdictional discovery and dismiss Arizona's border wall claims under Rules 12(b)(1) and 12(b)(6).[1]

## LEGAL STANDARDS

The plaintiff bears the burden of showing entitlement to discovery. *See, e.g., Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) ("As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." (citation omitted)); *Breakthrough Mgmt. Grp.,*

---

[1] Defendants' Motion to Dismiss is fully briefed. *See* ECF Nos. 27, 33, 36. In opposing dismissal, Arizona did not request discovery.

1

*Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010) ("the burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—[is] on the party seeking the discovery."). District courts have broad discretion to permit or to deny limited jurisdictional discovery. *LNS Enters. LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065, 1077 (D. Ariz. 2020), *aff'd*, 22 F.4th 852 (9th Cir. 2022) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977*))*. Courts should deny discovery requests "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Cheatem v. ADT Corp.*, 161 F. Supp. 3d 815, 823 (D. Ariz. 2016) (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)). A mere "hunch that [discovery] might yield jurisdictionally relevant facts" is insufficient, *LNS Enters. LLC*, 22 F.4th at 864–65 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)), and courts should not permit "fishing expedition[s] in search of a jurisdictional hook." *Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 69 (9th Cir. 2021) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)).

Because this is an APA case, discovery would be highly unusual. "Under the APA, a Federal judge reviews the Federal agency's actions based upon an administrative record prepared by the Federal agency. The judge gives appropriate deference to the agency's decisions and does not substitute the court's views for those of the agency. Jury trials and *civil discovery are not permitted in APA proceedings*." *Bark v. Northrop*, 2 F. Supp. 3d 1147, 1152 (D. Or. 2014) (quoting 42 C.F.R. § 137.309); *accord Decor Team LLC v. McAleenan*, No. CV-19-05346-PHX-MTL, 2020 WL 8922847, at *2 (D. Ariz. Mar. 23, 2020) (discussing the Ninth Circuit's "four narrow exceptions to the general rule that discovery and expansion of judicial review are not generally permitted in APA proceedings").

# ARGUMENT

The State proffers four reasons why discovery is appropriate: (1) that because immigration policy and enforcement are the province of the federal government, and because CBP compiles statistics on encounters with migrants, the federal government might have information on "why, how often, and where" migrants choose to cross, Pl.'s Br. 2; (2) that the government must have a view on the effectiveness of walls as a deterrent, which the State asserts is relevant to standing, *id.* at 3; (3) that DHS has announced plans for remedial work, which the State argues show environmental impacts relevant to standing, *id.*; and (4) that another court allowed discovery in Arizona's failed challenge to the February 18, 2021 Immigration and Customs Enforcement Interim Guidance. *Id.* at 4. Each fails, and no discovery can save Arizona's border wall claims.

*First*, Arizona offers nothing beyond pure speculation that discovery might "reveal facts pertinent to jurisdiction." *See* Pl.'s Br. 2. It is true that the immigration policy is the exclusive domain of the federal government and that DHS and CBP compile statistics on migrant encounters. *See id.* Indeed, throughout this litigation Arizona has repeatedly cited the agencies' public statistics. But the germane question is not how many migrants are crossing, or where. It is *why* they choose to cross. And this knowledge is not in Defendants' possession. *See Arizona v. Mayorkas*, 2022 WL 357348, at *8 ("the State is asking the Court to speculate about why aliens choose to enter the country illegally and about whether the construction of certain impediments to their entry—which would not eliminate the many other avenues of entry—would result in effective deterrence, such that the absence of those impediments may be said to be the literal cause of increased migration to Arizona."). The State's pure speculation of what discovery might produce cannot warrant discovery. *See LNS Enters. LLC*, 22 F.4th at 864–65; *see also Spy Optic*, 843 F. App'x at 69 (rejecting a jurisdictional "fishing expedition").

As this Court noted, there are many reasons migrants choose to enter the country. *See Arizona v. Mayorkas*, 2022 WL 357348, at *8 ("The Court concludes that this 'chain of reasoning,' like the chain of reasoning in *Whitewater Draw*, is marred by 'attenuation

1  . . . unsupported by well-pleaded facts' and impermissibly ignores 'the myriad [other]
2  economic, social, and political realities that might influence an alien's decision to risk life
3  and limb to come to the United States.'" (quoting *Whitewater Draw*, 5 F.4th at 1015)).
4  The specific reasons underlying individual migration decisions are known only to the
5  migrants themselves.  So jurisdictional discovery against Defendants cannot help Arizona
6  with its burden on traceability.
7  　　　None of the cases the State cites say otherwise.  Two involved requests for
8  discovery in response to Rule 12(b)(2) motions to dismiss for lack of personal
9  jurisdiction.  *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d
10 1122, 1127 (9th. Cir. 2003) ("We are asked to decide whether a federal district court in
11 California can properly exercise personal jurisdiction over London, England-based
12 entities alleged to have interfered with a California corporation's contractual and business
13 relations by their actions in Europe."); *Butcher's Union Local No. 498, United Food &*
14 *Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 537-38 (9th Cir. 1986) ("nonresident
15 employers filed motions for dismissal alleging lack of personal jurisdiction and improper
16 venue . . . . the Unions sought discovery in order to support their jurisdictional
17 allegations.").  For personal jurisdiction, discovery "might well demonstrate facts
18 sufficient to constitute a basis for jurisdiction," as defendants likely do possess the best
19 information on whether and how often they have contact with a forum.  Pl.'s Br. 1.  But
20 that does not support Arizona's request for discovery against Defendants to attempt to
21 divine the motives of non-parties.
22 　　　The third case relied on by Arizona involved a question of whether state land and
23 water acquisitions were federal actions requiring NEPA analysis.  *Laub v. U.S. Dept. of*
24 *Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  There, the plaintiff offered documentary
25 evidence showing "at least an arguable claim that the federal government plays a
26 significant enough role . . . to render actions taken pursuant to the program subject to
27 NEPA requirements."  *Id.*  The court held that this was enough to "create a 'reasonable
28 probability' that the outcome of the factual motion to dismiss would be different"

following discovery. *Id.* Here, there is no dispute about the federal government's involvement in the termination of a federal project. Rather, Arizona's stumbles because it offers no evidence that an 18-mile gap in the border wall caused increased migration and no explanation of how discovery against Defendants could uncover the motivations of third-party migrants.

*Second*, it is unclear why Arizona believes the government's view on the effectiveness of the border wall as a deterrent is relevant to the State's standing or why the State needs discovery on that point. *See* Pl.'s Br. 3. The State's briefing on this issue is conclusory, stating only that "[t]he efficacy of the intervention which the administration decided to terminate—the border barrier—is the question presented by standing" and that "[t]he government clearly has a view on this question." *Id.* But the record before the Court on the efficacy of border wall in Arizona is well developed. The State alleges an increase in migration since 2021, but "fails to explain why completing 18 more miles of construction, while still leaving the overall wall gap-filled and incomplete, would achieve what the previous 190 miles of construction [between 2018 and 2020] could not." *Arizona v. Mayorkas*, 2022 WL 357348, at *8; *accord id.* at *9 ("Nor would it make sense to attribute the immediate increase in migration to the cessation of construction activities, given that the border wall would not have otherwise been completed overnight (and, thus, the immediate increase in migration cannot be attributed to the cessation) and given that the 190 miles of additional border wall built between 2018 and 2020 was unable to stop this increase in migration."). In any event, the government's position on the efficacy of the border wall is publicly available and has been before the Court for months:

> Like every nation, the United States has a right and a duty to secure its borders and protect its people against threats. But building a massive wall that spans the entire southern border is not a serious policy solution. It is a waste of money that diverts attention from genuine threats to our homeland security. . . . It shall be the policy of [the] Administration that no more American taxpayer dollars be diverted to construct a border wall.

5

ECF No. 24-3 at 5.  There is no need for discovery on the government's position on the efficacy of border walls.

*Third*, the State continues to misstate the nature of the environmental remediation work for areas disturbed by past construction.  Pl.'s Br. 3; *see also* Pl.'s Notice of Factual and Legal Developments 1-2, ECF No. 21.  Remediation and close out work does not bolster Arizona's claim of environmental harm because the agencies are addressing impacts from construction, not from terminating construction.  *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. 28-29, ECF No. 24.  And this argument also misses the point.  As in *Whitewater Draw*, this Court's holding on standing turned on traceability, not injury-in-fact.  *See Arizona v. Mayorkas*, 2022 WL 357348, at *8 (discussing the problems with the State's standing theory "that the existing gaps in the border wall are enticing aliens who would otherwise remain in Mexico to stream into Arizona, which is in turn causing all manner of environmental and financial harm, and that if those gaps had only been filled through continued construction of the border wall, the would-be entrants would have been deterred from entering.").  So any discovery on the remediation plan is untethered to Arizona's standing problem.

*Fourth*, Judge Bolton's decision to allow jurisdictional discovery in *Arizona v. U.S. Department of Homeland Security* does not support discovery here.  There, the State alleged that DHS was releasing noncitizens whom Arizona placed on community supervision at the State's expense.  *Arizona v. U.S. Dept. of Homeland Security*, No. CV-21-00186-PHX-SRB, 2021 WL 2787930, at *6-7 (D. Ariz. June 30, 2021) , *appeal docketed*, No. 21-16118 (9th Cir. July 2, 2021).[2]  As this Court has already explained,

---

[2] In its Rule 12 motion, the government argued that Arizona lacked standing "'because [it] cannot demonstrate any actual or imminent injury caused by the challenged policies,' and alternatively that any claimed injuries are not 'fairly traceable to [the] challenged policies or redressable by an order of the Court.'"  *Arizona v. U.S. Dep't of Homeland Sec.*, 2021 WL 2787930, at *6 (alterations in original).  But the Court found standing because the State presented evidence that it "annually spends $4,163.60 per individual

1  allegations that the government is releasing migrants directly into a state are not as
2  attenuated as the "chain of reasoning" rejected by the Ninth Circuit in *Whitewater Draw*.
3  *See Arizona v. Mayorkas*, 2022 WL 357348, at *11 (distinguishing standing for the
4  challenge to MPP because "[d]ue to the mechanics of how that program worked, its
5  presence or absence was the but-for explanation for why certain aliens remained in the
6  United States or were returned to Mexico." (citation omitted)).  So even if discovery were
7  appropriate in the case before Judge Bolton, that does not mean it would be helpful here
8  where the State's claim of injury is much less direct.[3]
9        At bottom, the State refuses to grapple with this Court's reasoning in its denial of
10 the State's motion for a preliminary injunction.  The Court faulted the State for failing to
11 adduce a causal link between its alleged harms and the termination of 18 miles of border
12 wall construction, not for failing to adequately allege environmental harm.  *See Arizona*
13 *v. Mayorkas*, 2022 WL 357348, at *9 ("Although the State submits evidence that
14 migration 'has increased dramatically since the issuance of the Border Wall

---

placed on community supervision after they are released from state prison" and that "at least four noncitizens" who would have otherwise been removed from the country but for the challenged interim guidance had been placed on community supervision. *Id.* at 7-8; *see also id.* at 7 ("the increase in community supervision costs, both already suffered and likely to arise in the near future, constitutes a concrete and particularized injury"); *id.* at 8 (finding traceability prong satisfied because "ICE specifically relayed that it lifted the detainers because of the new enforcement priorities, which are embodied in the Interim Guidance."). The court ultimately dismissed Arizona's complaint under Rule 12(b)(6) because the challenged Interim Guidance was unreviewable. *Id.* at 8-9.

[3] Arizona also posits that its request is modest when compared to a typical civil case. Pl.'s Br. 4.  But this is an APA record review case, and not a typical civil case.  First Am. Compl. 36-40, ECF No. 13.  Any discovery is more burdensome than what is permitted in the typical APA case, as is the State's request that the Court compel the agencies to lodge the administrative records within 21 days, *see* Proposed Order, ECF No. 48-2, because it often takes several months from answering to compile and lodge an administrative record.  If the Court decides to grant the State's motion, Defendants request a scheduling conference to set deadlines for propounding discovery, lodging the agencies' records, or both.

7

Proclamation,' the State fails to show that the increase was caused *by the cessation of construction on the border wall*, as compared to economic, social, and political factors (or due to the many other immigration-related policies and programs the State seeks to challenge in this action)" (internal citation omitted)). Nor does the State acknowledge this Court's alternative ruling that NEPA does not apply to the decision to terminate border wall construction—an independent and adequate basis for dismissal. *Arizona v. Mayorkas*, 2022 WL 357348, at *13-15. As explained in Defendants briefing on Defendants' Motion to Dismiss, ECF No. 27 at 6-14; ECF No. 36 at 5-11, even if Arizona had standing, each of its border wall claims fail as a matter of law. *See In re United States*, 138 S. Ct. 443, 444 (2017) (instructing district court to resolve threshold questions before requiring government to compile administrative record). Discovery would be futile.

Arizona never explains how discovery against Defendants will allow the State to prove the subjective motivations of migrants not before the Court. Nor can discovery cure the State's flawed legal theories. This Court should deny the State's request for a "fishing expedition in search of a jurisdictional hook," *Spy Optic, Inc.*, 843 F. App'x at 69 (citing *Pebble Beach Co.*, 453 F.3d at 1160), and dismiss Arizona's border wall claims.

## CONCLUSION

Arizona has not met its burden on standing for its border wall claims; the State cannot show that its alleged injuries from migration are traceable to the termination of 18 miles of border wall construction. Nor has Arizona shown how discovery would alter the outcome for its meritless border wall claims. This Court should deny Arizona's request for jurisdictional discovery and grant Defendants' motion to dismiss Arizona's border wall claims under Rules 12(b)(1) and 12(b)(6).

Submitted this 17th day of March, 2022,

TODD KIM
Assistant Attorney General
U.S. Department of Justice

|   |   |
|---|---|
| 1 | Environment & Natural Resources Division |
| 2 | /s/ Tyler M. Alexander |
| 3 | TYLER M. ALEXANDER |
|   | Trial Attorney |
| 4 | Natural Resources Section |
| 5 | 150 M St. NE, Third Floor |
|   | Washington, D.C. 20002 |
| 6 | (202) 598-3314 |
| 7 | tyler.alexander@usdoj.gov |
| 8 | *Attorneys for Defendants* |