TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

TYLER M. ALEXANDER (CA Bar No. 313188)
Trial Attorney
Natural Resources Section
150 M St. NE, Third Floor
Washington, D.C. 20002
(202) 598-3314
tyler.alexander@usdoj.gov

*Attorneys for Defendants*

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| State of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 2:21-cv-00617-PHX-DWL<br><br>**DEFENDANTS' RENEWED PARTIAL MOTION TO DISMISS (RULES 12(b)(1), (6))** |

# TABLE OF CONTENTS

Introduction ........ 1

Legal Standards ........ 2

I. Dismissal under Rule 12(b)(1) for Lack of Subject-Matter Jurisdiction ........ 2

II. Dismissal under Rule 12(b)(6) for Failure to State a Claim ........ 3

Argument ........ 3

I. Arizona Continues to Lack Standing for its Border Wall Claims ........ 3

II. The Secure Fence Act Forecloses Suits to Compel Border Barrier Construction ........ 8

III. Arizona's NEPA Challenge to the Secretary's Decision to Terminate MPP Fails ........ 11

Conclusion ........ 12

# TABLE OF AUTHORITIES

**Cases**

*Andrus v. Sierra Club*,
  442 U.S. 347 (1979) .................................................................................................. 11

*Arizona v. Mayorkas*,
  No. CV-21-00617-PHX-DWL, 2022 WL 1289301 (D. Ariz. Apr. 28, 2022) ................... 1, 4, 5

*Arizona v. Mayorkas*,
  No. CV-21-00617-PHX-DWL, 2022 WL 357348 (D. Ariz. Feb. 7, 2022) .. 1, 3, 4, 5, 7, 8, 9, 10

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ....................................................................................... 1

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ....................................................................................... 3

*Calipatria Land Co. v. Lujan*,
  793 F. Supp. 241 (S.D. Cal. 1990) .............................................................................. 11

*Ctr. for Biological Diversity v. Salazar*,
  791 F. Supp. 2d 687 (D. Ariz. 2011) ........................................................................... 11

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
  379 F. Supp. 2d 1071 (N.D. Cal. 2005) ...................................................................... 11

*Lee v. City of L.A.*,
  250 F.3d 668 (9th Cir. 2001) ....................................................................................... 3

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 3

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977) ........................................................................................ 2

*Nw. Ctr. for Alts. to Pesticides v. U.S. Dept. of Homeland Sec.*,
  552 F. Supp. 3d 1078 (D. Or. 2021) ........................................................................... 11

*Paulsen v. Daniels*,
  413 F.3d 999 (9th Cir. 2005) ..................................................................................... 12

*Pride v. Correa*,
  719 F.3d 1130 (9th Cir. 2013) ..................................................................................... 2

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ....................................................................................... 3

*Sierra Club v. Penfold*,
  857 F.2d 1307 (9th Cir. 1988) ................................................................................... 12

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ................................................................................. 2

*Tucson Rod & Gun Club v. McGee*,
  25 F. Supp. 2d 1025 (D. Ariz. 1998) ................................................................... 11

*United States v. Arizona*,
  No. CV 10-1413-PHX-SRB, 2011 WL 13137062 (D. Ariz. Oct. 21, 2011) ........... 10

*United States v. Glenn-Colusa Irrigation Dist.*,
  788 F. Supp. 1126 (E.D. Cal. 1992) ................................................................... 11

*United States v. Rainbow Fam.*,
  695 F. Supp. 314 (E.D. Tex. 1988) ..................................................................... 12

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ................................................................................ 3

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .............................................................................. 2

**Statutes**

42 U.S.C. § 4332(2)(C) ............................................................................................ 11

8 U.S.C. § 1103 .......................................................................................................... 9

8 U.S.C. § 1225(b)(2)(C) ......................................................................................... 11

8 U.S.C. § 1701 .......................................................................................................... 9

Pub. L. No. 109-367 ................................................................................................... 9

Pub. L. No. 110-161 ................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 3

**Regulations**

40 C.F.R. § 1501.4(a) ................................................................................................ 7

# INTRODUCTION

Arizona continues to press its challenge to the Department of Defense's (DoD) decisions to terminate eighteen miles of border barrier projects within the state. In two rulings earlier this year, this Court held that Arizona lacked standing to pursue those claims. *Arizona v. Mayorkas*, No. CV-21-00617-PHX-DWL, 2022 WL 1289301, at *6 (D. Ariz. Apr. 28, 2022), *reconsideration denied*, No. CV-21-00617-PHX-DWL, 2022 WL 2304527 (D. Ariz. June 27, 2022); *Arizona v. Mayorkas*, No. CV-21-00617-PHX-DWL, 2022 WL 357348, at *12 (D. Ariz. Feb. 7, 2022).[1] Nothing has changed; Arizona still cannot show that the challenged decisions were not merely part of the "'myriad economic, social, and political realities' that might influence an alien's decision to 'risk[ ] life and limb' to come to the United States." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1015 (9th Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015)). Arizona thus still lacks standing to challenge the termination of the border wall projects, and this Court should again dismiss the State's border wall claim.

This Court should also dismiss Arizona's National Environmental Policy Act (NEPA) challenge to the Secretary of Homeland Security's October 29, 2021 Memoranda ending the Migrant Protection Protocols (MPP). Enforcement decisions—like whether and how to employ the Secretary's return to contiguous territory authority—are not "major federal actions" triggering NEPA. Further, if ending MPP required a NEPA analysis, so too did the decision to adopt the policy in the first place. Because the Department of Homeland Security (DHS) did not prepare a NEPA analysis before implementing MPP, this Court cannot grant Arizona's request to reinstate a policy that would itself violate the Act.

---

[1] Arizona voluntarily dismissed its appeal of this Court's denial of preliminary relief. *See* ECF No. 77.

1

This Court should dismiss Arizona's border wall claim and Arizona's NEPA challenge to the Secretary of Homeland Security's October 29, 2021, decision to end MPP.[2]

## LEGAL STANDARDS

### I. Dismissal under Rule 12(b)(1) for Lack of Subject-Matter Jurisdiction

Federal Courts are courts of limited jurisdiction, and Rule 12(b)(1) allows a defendant to challenge the Court's subject-matter jurisdiction to hear the case. A challenge may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). For facial attacks, the reviewing court must dismiss for lack of subject matter jurisdiction if—accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor—the allegations do not establish jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). By contrast, when a motion to dismiss presents "a factual attack on subject matter jurisdiction . . . [n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Where, as here, "a claimant challenges the National Government's actions with respect to third parties . . . it is 'substantially more difficult' to establish standing given the causation and redressability problems that invariably arise." *Arizona v. Biden*, 31

---

[2] Arizona's first, second, and seventh claims for relief were previously dismissed with prejudice. Order, ECF No. 64. As the Court has recognized, Arizona previously withdrew its fourth claim for relief brought under the Endangered Species Act, see ECF No. 20 at 1 and ECF No. 73 at 1 n.1 , and counsel for Arizona recently confirmed to Defendants that the State does not consider this claim in the second amended complaint operative or pending before the Court. Ex. G. The State's third and fifth claims for relief should now be dismissed, leaving only the sixth claim to proceed to Rule 56.

F.4th 469, 474 (6th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-62 (1992)).

## II. Dismissal under Rule 12(b)(6) for Failure to State a Claim

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). While the Court assumes plaintiff's material factual allegations are true, district courts may not assume the truth of legal conclusions "merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). In deciding a motion to dismiss under Rule 12(b)(6), courts may consider the facts alleged in the complaint, documents either attached to or relied on by the complaint, and facts on which the Court may take judicial notice. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

### ARGUMENT

This Court previously dismissed Arizona's border wall claims (Claim 5) for want of standing. Because the new allegations in the State's Second Amended Complaint do not cure that deficiency, the Court should do so again. Even if Arizona had standing, its border wall claim would still fail because Congress has foreclosed suits to compel border wall construction at specific locations. The Court should also dismiss Arizona's NEPA challenge to the Secretary's October 29, 2021 decision to end MPP (Claim 3) because NEPA does not apply to enforcement decisions and, if NEPA did apply, the original decision to implement MPP itself would also be infirm.

## I. Arizona Continues to Lack Standing for its Border Wall Claims

Last time, this Court explained that Arizona's allegations and evidence showed "[a]t most . . . a temporal correlation" between DoD's decision to terminate eighteen miles of border wall construction in Arizona and increased migration. *Arizona*, 2022 WL

3

357348, at *9. Because mere correlation could not satisfy the State's burden to show that the decision "was the cause of increased immigration, as opposed to 'the myriad [other] economic, social, and political realities that might influence an alien's decision to risk life and limb to come to the United States,'" *Id.* at *8 (quoting *Whitewater Draw*, 5 F.4th at 1015), the Court dismissed Arizona's border wall claims, but allowed the State leave to amend Claim 5 to "add new factual allegations intended to shore up the jurisdictional deficiencies" in that claim. *Arizona*, 2022 WL 1289301, at *17. The new allegations in Arizona's Second Amended Complaint change nothing, and so the Court should again dismiss Claim 5.

This Court earlier held that Arizona's standing theory relied on a "chain of reasoning . . . marred by attenuation[,] unsupported by well pleaded facts[,] and impermissibly ignores the myriad other economic, social, and political realities that might influence an alien's decision to risk life and limb to come to the United States."[3] *Arizona*, 2022 WL 357348, at *8 (quoting *Whitewater Draw*, 5 F.4th at 1015) (cleaned up). First, the Court explained that it is speculative that eighteen miles of additional border wall would prevent migrants from entering Arizona because gaps would remain and "[a]n incomplete wall is an incomplete wall." *Id.*; *see also id.* ("The State fails to explain why completing 18 more miles of construction, while still leaving the overall wall gap-filled and incomplete, would achieve what the previous 190 miles of construction could not."). Second, the Court faulted Arizona for "fail[ing] to acknowledge that aliens committed to entering the United States have time and again found ways to overcome and bypass walls on the southern border." *Id.* The Court held that the State had not shown that eighteen more miles of wall "which would not eliminate the many other avenues of entry . . . would result in effective deterrence, such that the absence of those impediments may be said to be the literal cause of increased migration

---

[3] And as more time passes since the challenged agency decision—DoD paused construction on January 21, 2021 and then terminated the projects a few months later—the chain of attenuation only grows.

4

to Arizona." *Id.* While the Court acknowledged evidence of increased migration, Arizona had not "show[n] that the increase was caused *by the cessation of construction on the border wall*, as compared to economic, social, and political factors (or due to the many other immigration-related policies and programs the State seeks to challenge in this action)." *Id.* at *9.

Arizona's new allegations do not help satisfy its burden. Arizona first offers a 2020 academic paper that examined past border fence construction and concluded: (1) that migrants prefer to cross in unfenced areas and (2) fencing increases the cost of crossing, which could deter some migrants. *See* SAC ¶¶ 96-106 (citing Benjamin Feigenberg, Fenced Out: The Impact of Border Construction on US-Mexico Migration, 12 AMERICAN ECONOMIC JOURNAL: APPLIED ECONOMICS 106 (2020)). First, this paper predates the filing of this lawsuit—and indeed, the challenged decision—and there is no reason Arizona could not have cited it before now. *See Arizona*, 2022 WL 1289301, at *17 (allowing leave to amend because "Defendants stated that they expect to produce additional information to the State (pursuant to a FOIA request) in the near future . . . [and] it is at least theoretically possible that the State will, upon receipt of this *new* information, be able to amend its complaint to add new factual allegations intended to shore up the jurisdictional deficiencies") (emphasis added). Second, the paper's conclusions are seriously undercut by Arizona's own allegation that border crossings are at a record high despite the nearly two hundred miles of new border fence built during the last administration. *See, e.g.*, SAC ¶ 89; *Arizona*, 2022 WL 357348, at *8. Third, the paper considered the increased cost imposed on migrants by hundreds of miles of fence construction. It does not support Arizona's contention that a mere "18 more miles of construction, while still leaving the overall wall gap-filled and incomplete, would achieve what the previous . . . construction could not." *Arizona*, 2022 WL 357348, at *8. It remains entirely speculative that marginally increased costs from another eighteen miles of border wall would outweigh "the myriad [other] economic, social, and political

realities that might influence an alien's decision to risk life and limb to come to the United States," *Whitewater Draw*, 5 F.4th at 1015, and deter border crossing.

Arizona also notes that DHS has announced a small project in the Yuma sector to close "a small gap . . . that remains as a result of previous border barrier construction activities and poses a life and safety risk to Agents and the community." U.S. Dep't of Homeland Sec., DHS to Address Life, Safety, Environmental, and Operational Considerations for Border Barrier Projects in California, Arizona, and Texas (May 27, 2022), https://www.dhs.gov/news/2022/05/27/dhs-address-life-safety-environmental-and-operational-considerations-border-barrier; SAC ¶¶ 108-110.  This implementation of DHS's border plan should put to bed Arizona's allegation that DHS is refusing to spend its border infrastructure appropriations. *See, e.g.*, SAC ¶ 82.  But it does not support Arizona's contention that the termination of eighteen miles of border barrier projects a year and a half ago is *causing* increased immigration (and attendant population growth) in Arizona.

The bulk of Arizona's new allegations selectively quote documents obtained through FOIA, but none support the State's standing here, because none suggests that failing to close any particular gap will cause an increase in migration.  Paragraph 111 merely quotes from a NEPA scoping notice explaining the purpose and need for a proposed segment of barrier in Texas. Ex. A at 3.  It states the obvious: when DHS builds barrier, it does so to advance its mission.  Paragraph 112 quotes a slide on an agency PowerPoint discussing the need to install design features for completed wall segments and close small gaps to protect human health and safety—some of the work that will go forward in Yuma. Ex. B at 22.  And paragraph 113 is just innuendo based on a legitimate deliberative process privilege redaction. Ex. C at 3.  Yes, DHS is implementing its border wall plan, which involves closing out construction sites, installing missing design features, and closing small gaps to address immediate health and safety concerns.  Arizona may disagree with DHS's priorities and might prefer the construction of more barrier.  But that does not move the needle on standing; none of

these documents show that the termination of eighteen miles of DoD-funded border wall is the "literal cause of increased migration to Arizona." *Arizona*, 2022 WL 357348, at *8.

The remaining documents produced under FOIA do not help Arizona either. *See* SAC ¶¶ 114-21. Paragraph 115 quotes a NEPA Categorical Exclusion (CE)[4] document prepared by DHS for border infrastructure in the Yuma sector. Ex. D. The CE states that apprehensions in the project area have been increasing for at least the past 5 years—well before the action challenged here. *Id.* at 2. It explains that construction will not transform the environment in the area because the area is "heavily disturbed" by years of border crossings and the more recent construction of "an access road associated with a Department of Defense [barrier] project." *Id.* at 3. The CE acknowledges that some areas along the southern border are heavily disturbed by years of migration and law enforcement activity. But because a CE is an environmental analysis (not a predictor of immigration trends), it does not help Arizona meet its burden to show that termination of discrete sections of border wall *causes* migrant crossings and associated disturbance.

Paragraph 116 quotes a NEPA scoping letter for border infrastructure in Laredo, Texas. Ex. A. The letter discusses the environmental effects of border barrier construction—and the types of design features that help minimize those affects. *Id.* at 4. It does not suggest that the decision to terminate barrier construction has harmed the environment. Neither do the PowerPoint slides quoted in Paragraph 117-19, which explain that past construction sites could pose "environmental restoration issues *if not*

---

[4] Under NEPA, CEs are defined as "categories of actions that normally do not have a significant effect on the human environment, and therefore do not require preparation of an environmental assessment or environmental impact statement." 40 C.F.R. § 1501.4(a). An agency may rely on a CE to achieve NEPA compliance for a proposed action by documenting the absence of any "extraordinary circumstances in which a normally excluded action may have a significant effect." *Id*. § 1501.4(b).

7

*remediated*" and discuss the steps necessary to safely close out those projects.[5]  Ex. E at 8.  That work is necessary because of past construction, not the decision to end construction.  Paragraphs 120 and 121 misunderstand a Customs and Border Protection (CBP) talking point memo, which explains that, because DoD's closeout work will not fully remediate the effects of past construction at their work sites, "[c]onsistent with the DHS Wall Plan, CBP will undertake activities necessary to address life, safety, and environmental remediation requirements for these project areas."  Ex. F at 3.  Again, this environmental restoration work is necessary to address the impacts of past construction, not impacts of the decision to end construction.  The remaining new paragraphs, 122-27, complain that DHS is doing too much NEPA analysis for projects in Texas.  These arguments are ironic given Arizona's insistence that NEPA is required prior to terminating construction—as well as its alleged environmental harms—but are irrelevant to the State's claims.

In short, Arizona's new allegations miss the mark.  Defendants do not dispute that migrants prefer to cross unfenced sections of the border or that areas where large numbers of migrants have crossed may be disturbed.  But because Arizona's alleged injuries flow from the actions of non-parties, it must show that DoD's decision to terminate eighteen miles of border wall *caused* increased migration.  *Arizona*, 2022 WL 357348, at *8-12.  This, the State still cannot do.  And so this Court should again dismiss Arizona's border wall claim (Claim 5) for lack of standing.

## II. The Secure Fence Act Forecloses Suits to Compel Border Barrier Construction

Defendants previously noted that even if Arizona had standing, Claim 5 should be dismissed because it challenged Presidential action that is not reviewable under the APA,

---

[5] DHS is undertaking remediation efforts in the area.  *See* U.S. Dep't of Homeland Sec., DHS to Address Life, Safety, Environmental, and Operational Considerations for Specific Border Barrier Projects (July 27, 2021), https://www.dhs.gov/news/2021/07/27/dhs-address-life-safety-environmental-and-operational-considerations-specific-border.

*see* Defs.' Opp. to Mot. for Prelim. Inj. 29, ECF No. 24, and because it brought an impermissible "standalone" APA claim untethered to any statutory criteria against which the decision to terminate border wall construction could be reviewed, *see* Defs.' Mot. to Dismiss 6-8, ECF No. 27.[6] In its amended Complaint Arizona seeks to rehabilitate its APA challenge to the decision to terminate border barrier construction by asserting that it arises under the Secure Fence Act of 2006. SAC ¶¶ 214, 216. This attempt fails.

The Secure Fence Act, as amended, makes plain that Congress intended to vest broad discretion in the Secretary of Homeland Security over whether and where to build border barrier. *See* Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 110-161, § 564(2)(D), 121 Stat 1844, 2091 (2007) (codified at 8 U.S.C. § 1103 note). In vesting discretion in the Secretary, the Act forbids the relief Arizona seeks here. *Id.* § 102(b)(1)(D) ("nothing in this paragraph shall require the Secretary of Homeland Security to install *fencing*, *physical barriers* . . . in a particular location along an international border of the United States" (emphasis added)).

The history of the Secure Fence Act is revealing. Congress passed (and President Bush signed) the Act in 2006, directing the Secretary to take all actions he finds necessary and appropriate to "achieve and maintain operational control" over the border. Secure Fences Act, Pub. L. No. 109-367, 120 Stat. 2638, § 2 (2006) (codified at 8 U.S.C. § 1701 note). At the time it was passed, the Act amended Section 102 of IIRIRA to require DHS to construct reinforced fencing and other security features at five specifically identified areas along the southern border, including in Arizona. *Id.* But in 2008, Congress amended the Act to strike those requirements. The current version of Section 102 conveys broad discretion to the Secretary over whether—and, if so, where, when, and how—to build border infrastructure. IIRIRA, § 102(b)(1)(A). At the same time, Congress foreclosed attempts to use the Secretary's statutory authority to compel DHS to build border infrastructure:

---

[6] Defendants reassert these arguments here.

9

> Notwithstanding subparagraph (A), nothing in this paragraph shall require the Secretary of Homeland Security to install fencing, physical barriers, roads, lighting, cameras, and sensors in a particular location along an international border of the United States, if the Secretary determines that the use or placement of such resources is not the most appropriate means to achieve and maintain operational control over the international border at such location.

*Id.* § 102(b)(1)(D).

Indeed, courts have rejected Arizona's previous attempts to use the Secure Fence Act to compel DHS to build barriers along the border. In *United States v. Arizona*, the State argued:

> that the Secure Fence Act requires the DHS to achieve and maintain "operational control" of the United States-Mexico border and that the 2008 Appropriations Act and the DHS Appropriations Act of 2010 ("DHS Appropriations Act") require the Secretary to construct at least 700 miles of fencing and additional physical barriers, roads, lighting, and other detection technology along the southwest border in order to obtain operational control over the United States' borders.

No. CV 10-1413-PHX-SRB, 2011 WL 13137062, at *8 (D. Ariz. Oct. 21, 2011). The court dismissed that claim, holding that the Secure Fence Act and IIRIRA "do not mandate any discrete agency action with the clarity to support a judicial order compelling agency action" and that "no judicially manageable standards permit the Court to determine how or when the DHS or the Secretary should complete the fencing and infrastructure construction contemplated by the IIRIRA, the Secure Fence Act, and the Appropriations Acts." *Id.* at *8-9. This Court should reach the same result here.

Through the DHS Border Wall Plan, the Secretary is exercising his discretion, including by building additional barrier in areas he finds "the most appropriate." *See* IIRIRA, § 102(b)(1)(D); SAC ¶¶ 109-10 (acknowledging that DHS is building barrier in Arizona). Congress has foreclosed Arizona's attempt to compel barrier construction in other locations. Arizona's border wall claim thus fails as a matter of law and should be dismissed.

### III. Arizona's NEPA Challenge to the Secretary's Decision to Terminate MPP Fails

Arizona's third claim is that the DHS erred in failing to prepare an Environmental Impact Statement (EIS) in conjunction with its October 29, 2021 Memoranda ending the Migrant Protection Protocols (MPP). This claim must be dismissed because the termination of the MPP is not a major federal action subject to NEPA.

NEPA only requires preparation of an Environmental Impact Statement (EIS) for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). If there is no major federal action, "that is the end of the inquiry; the agency need not prepare NEPA analysis." *Ctr. for Biological Diversity v. Salazar*, 791 F. Supp. 2d 687, 696 (D. Ariz. 2011), *aff'd*, 706 F.3d 1085 (9th Cir. 2013) (quoting *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 379 F. Supp. 2d 1071, 1099 (N.D. Cal. 2005)). The Council on Environmental Quality's (CEQ) CEQ's NEPA-implementing regulations—which receive "substantial deference" in their interpretation of NEPA, *Andrus v. Sierra Club*, 442 U.S. 347, 358 (1979)—provide that the definition of "[m]ajor [f]ederal action does not include . . . [j]udicial or administrative civil or criminal enforcement actions." 40 C.F.R. § 1508.1(q)(1)(iv).

The Immigration and Nationality Act (INA) provides DHS with enforcement discretion to return certain inadmissible noncitizens arriving on land to contiguous territories. 8 U.S.C. § 1225(b)(2)(C). Decisions about how to implement this enforcment authority do not require NEPA review. As the District of Oregon explained, requiring NEPA for enforcement decisions "would lead to a highly impractical result in which any decision of a law enforcement agency—whether to go forward with an action or forbear from action—would require a NEPA analysis." *Nw. Ctr. for Alts. to Pesticides v. U.S. Dept. of Homeland Security*, 552 F. Supp. 3d 1078, 1091 (D. Or. 2021) (quoting *United States v. Glenn-Colusa Irrigation Dist.*, 788 F. Supp. 1126, 1135 (E.D. Cal. 1992)). Many other courts have recognized the inapplicability of NEPA to enforcement decisions. *See, e.g.*, *Tucson Rod & Gun Club v. McGee*, 25 F. Supp. 2d 1025, 1029 (D.

Ariz. 1998) ("Administrative enforcement actions . . . do not require performance of a NEPA analysis . . . ."); *Calipatria Land Co. v. Lujan*, 793 F. Supp. 241, 245 (S.D. Cal. 1990) (recognizing that there "can be no question that the enforcement itself of" Fish and Wildlife Service anti-baiting regulations through injunction is exempt from NEPA review); *Sierra Club v. Penfold*, 857 F.2d 1307, 1314 (9th Cir. 1988) (recognizing that Bureau of Land Management's enforcement authority is not "major Federal action" triggering NEPA review); *United States v. Rainbow Fam.*, 695 F. Supp. 314, 324 (E.D. Tex. 1988) (recognizing that NEPA exempts from review agency decisions about whether to "bring a civil or criminal action to enforce Forest Service or other governmental regulations and statutes"). Because the MPP is an enforcement action to which NEPA does not apply, Arizona's third claim must be dismissed.

In the end, even if NEPA did apply, Arizona would still not receive its requested relief of reinstating the MPP. No NEPA analysis was prepared before the previous administration implemented MPP. So the proper remedy would not be to reinstate a legally infirm policy. Rather, if this Court finds that NEPA applies, the correct result would be to reinstate the regulatory regime before MPP, not to resurrect a policy that also lacks NEPA analysis. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) (holding 1997 rule invalid but declining to reinstate prior 1995 rule because it also contained legal error).

In previous briefing on this issue, Arizona failed to cite a single example in which a federal agency had to prepare a NEPA analysis before reaching an enforcement decision. The State's failure to do so is telling. Besides departing from CEQ's NEPA implementing regulations, caselaw, and the public interest, the State's claim defies common sense. This Court should dismiss Arizona's NEPA challenge to the October 29, 2021 memoranda terminating MPP.

## CONCLUSION

Arizona has not cured the defects in its standing theory for its border wall claim, and so this Court should again dismiss that claim for want of jurisdiction. More,

Congress has forbidden suits compelling border barrier construction, and so Arizona's border wall claim would fail even if the State had standing. Finally, NEPA does not apply to enforcement decisions. And even if NEPA did apply, that would not help Arizona, as DHS did not prepare a NEPA analysis before implementing MPP in the first place.

This Court should dismiss counts three and five of Arizona's Second Amended Complaint.

Submitted this 19th day of September, 2022,

>TODD KIM
>Assistant Attorney General
>U.S. Department of Justice
>Environment & Natural Resources Division
>
>*/s/ Tyler Alexander*
>TYLER M. ALEXANDER
>Trial Attorney
>Natural Resources Section
>150 M St. NE, Third Floor
>Washington, D.C. 20002
>(202) 598-3314
>tyler.alexander@usdoj.gov
>
>*Attorneys for Defendants*